MAGGIE HOOSE v. THE PRESCOTT INSURANCE COMPANY OF BOSTON.

*Fire insurance—Authority of agent—Construction of policy—Warranties—Interest of assured.*

1. An insurance company is bound by *verbal* statements made to its agent, and upon which it issues a policy and receives the premium; and it cannot repudiate in such policy the authority of the agent, or responsibility for his acts.

  So *held*, where an agent, with full knowledge that the assured was the owner of the equitable title to the land upon which the building stood upon which she verbally applied for insurance, issued a policy containing a provision that the company should not be bound by any act of or statement made to the agent not contained in the policy or the written application for insurance and other preliminary papers; which non-liability clause, under the circumstances stated, is held only to affect statements and acts of agents and others *after* the delivery and acceptance of the policy.[1]

2. A warranty in an insurance policy that any application or statement connected with its procurement is true, and shall be a part of the policy, makes an oral application, and the accompanying statements made to the agent as to the condition of the title, a part of the policy.

3. On making a verbal application for insurance, the agent was informed (as found by the jury) that the applicant held the land on which the building stood under a land contract, and that it was incumbered by a mortgage. The policy insured the applicant to the amount of $1,000 on a certain building, locating it as to streets and occupancy, against loss or damage by fire, not exceeding the *interest of the assured* in the property, which interest was not stated. The policy was to be void, unless consent in writing was indorsed by the company, if the assured was not the sole and unconditional owner of the property; or if any building intended to be insured stood on ground not owned in fee-simple by the assured; or if the interest of the assured in the property was not truly stated; or if any change took place in the title, interest, location, or pos-

[1] See *Cook v. Insurance Co.*, 84 Mich. 12; *Gristock v. Insurance Co.*, Id. 161.

session of the property, by sale, transfer, or conveyance, in whole or in part. In a suit upon the policy the company denied the plaintiff's right to recover, because of the violation of the foregoing conditions. And it is held that, if the company had desired to know what interest it was insuring, it should have stated it in that portion of the policy pertaining to the risk: and that, to give any reasonable force and effect to the clause requiring the indorsement of its consent in the cases stated, it must be held to apply to changes in ownership arising *after* the delivery and acceptance of the policy.

4. The following propositions are summarized from the opinion of Chief Justice CHAMPLIN:

*a*—In construing warranties in insurance policies, the prime object to be reached is the intention of the parties, which, when found, must control, and such warranties must be interpreted by the rules applicable to the interpretation of other mercantile contracts.

*b*—All written instruments, where the provisions are clear and unambiguous, are entitled to a literal interpretation, and wherever in a policy of insurance there is a clear breach of a warranty contained therein, however immaterial it may be, the policy will be avoided.

*c*—The reasons for such literal construction appear to be that insurance is granted on the faith of the accuracy of the statements made by the assured, the information concerning which is generally, and often exclusively, within his knowledge, and it is only just to an insurer, when he asks for positive and accurate information, that it should be given to him. It is in reliance upon the facts given that the contract of insurance is made, and the purpose of requiring a warranty is to dispense with inquiry, and cast upon the assured the obligation that the facts shall be as he represents them; citing *Insurance Co. v. Huntzinger*, 98 Penn. St. 41.

*d*—In arriving at the intention of the parties to an insurance contract, the court must look at their situation, the condition of the thing insured, and what was said or done at the time the insurance was effected. If the representations of the assured are in writing, that is the evidence of what they are; but if the application and representations are verbal, oral proof is competent to establish the same.

Error to Wayne. (Hosmer, J.) Argued December 5, 1890. Decided December 24, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*E. W. Pendleton* (*Thomas Bates,* of counsel), for appellant, contended:

1. In support of the claim that the restrictions in the policy upon the authority of the agent to waive any of its conditions were an express limitation upon such authority, of which the plaintiff had full notice, counsel cited *Cleaver v. Insurance Co.,* 65 Mich. 527, and cases cited; Wood, Ins. (2d ed.) § 411; *Zimmerman v. Insurance Co.,* 77 Iowa, 685; *Walsh v. Insurance Co.,* 73 N. Y. 5; *Loring v. Insurance Co.,* 8 Gray, 32.

2. Under the condition that if any change takes place in the title, interest, etc., of the property, whether by sale, transfer, or conveyance, in *whole or in part,* etc., the policy shall become void, the execution of the $300 mortgage avoided the policy; citing *Sossaman v. Insurance Co.,* 78 N. C. 145; *Edmands v. Insurance Co.,* 1 Allen, 311; *Sherwood v. Insurance Co.,* 73 N. Y. 447; *Germond v. Insurance Co.,* 2 Hun, 540; *Tatham v. Insurance Co.,* 4 Id. 136.

*Walter Barlow* (*George F. Robison* and *Thomas Kissane,* of counsel), for plaintiff, contended:

1. A party dealing with an insurance agent, through whom he applies for and obtains a policy of insurance, has a right to presume that material facts known to the agent are by him communicated to his principal; and notice to the agent is notice to the principal; citing *Insurance Co. v. Hall,* 12 Mich. 213; *Insurance Co. v. Olmstead,* 21 Id. 253; *Insurance Co. v. Fay,* 22 Id. 472; *Kitchen v. Insurance Co.,* 57 Id. 145.

2. In support of the claim that under the terms of the policy the giving of the mortgage did not avoid the insurance, counsel cited *Insurance Co. v. Spankneble,* 52 Ill. 53; *Insurance Co. v. Walsh,* 54 Id. 168; *Insurance Co. v. Eddy,* 55 Id. 220; *Friezen v. Insurance Co.,* 30 Fed. Rep. 357; *Loy v. Insurance Co.,* 24 Minn. 315; *Judge v. Insurance Co.,* 132 Mass. 522; *Shepherd v. Insurance Co.,* 38 N. H. 240.

3. On the question of the alleged estoppel of the company by the agent's knowledge of the situation of the property as to ownership and incumbrances, counsel cited *Insurance Co. v. Hall,* 12 Mich. 213; *Insurance Co. v. Olmstead,* 21 Id. 253; *Insurance Co. v. Throop,* 22 Id. 159; *Insurance Co. v. Lewis,* 30 Id. 44; *Kitchen v. Insurance Co.,* 57 Id. 144; *Baker v. Insurance Co.,*

70 Id. 199; *Temmink v. Insurance Co.*, 72 Id. 388; *Copeland v. Insurance Co.*, 77 Id. 554; *Crouse v. Insurance Co.*, 79 Id. 249.

4. Plaintiff's insurable interest in the building was its full value at the time of the fire, and not the difference between such value and the incumbrances on the property; citing *Nussbaum v. Insurance Co.*, 37 Fed. Rep. 524; *Judge v. Insurance Co.*, 132 Mass. 523; *Holbrook v. Insurance Co.*, 1 Curtis, 197; *Guest v. Insurance Co.*, 66 Mich. 100.

5. A party holding land under a land contract has an insurable interest therein; citing *Crouse v. Insurance Co.*, 79 Mich. 249; *Dupreau v. Insurance Co.*, 76 Id. 615; *Guest v. Insurance Co.*, 66 Id. 98; and this is true even though no part of the purchase money has been paid; citing *Insurance Co. v. Dunham*, 117 Penn. St. 460; *Gilman v. Insurance Co.*, 81 Me. 488.

CHAMPLIN, C. J. This is an action upon a policy of insurance.

On May 19, 1888, the Prescott Insurance Company, through Howard W. Sterling, who, at that time, was its agent at Detroit, issued to Margaret Hoose its policy of insurance, covering $1,000 on building corner of Milwaukee avenue and Beaubien street, in Detroit, $1,500 on a stock of groceries, provisions, cigars, etc., contained in said building, and $500 on store furniture, fixtures, counters, shelves, show-cases, and scales; the policy running one year. A fire occurred on March 20, 1889, by which the building was destroyed, together with certain personal property.

On February 19, 1886, Margaret Hoose by deed conveyed the building described in the policy sued on, together with the lot on which it stood, to her son-in-law, George W. Morgan, to secure, as Morgan testifies, $2,000 which he loaned "to the family;" and, at the time it was given, he gave back to Margaret Hoose a land contract, which provided that he was to convey the property back when Margaret Hoose paid him $2,000, with interest at 7 per cent. On July 24, 1888, at Margaret

Hoose's request, Morgan testifies that he destroyed the contract he gave Margaret Hoose, and made another contract of the same kind to Maggie Hoose (her daughter). This contract was never acknowledged or recorded, and, it is claimed, was destroyed in the fire. On the same day, July 24, 1888, Margaret Hoose, with the consent of the defendant company, assigned her interest in the policy of insurance to Maggie Hoose. The witness Morgan testifies that there was no time fixed in the contract when the $2,000, with interest, was to be paid him; that Maggie Hoose gave him no notes, and that she could pay it when she got ready, in 20, 30, or 40 years; that no interest had been paid him; and that, in addition to the $2,000 and interest, the property was incumbered by a mortgage given by Margaret Hoose of $1,200; and that after he gave this contract to Maggie, and in November, 1888, he, together with his wife, gave a further mortgage upon the property, with the knowledge and consent of Maggie Hoose, for $300. This money was for the benefit of her brother Alfred Hoose, who was her general agent in the transaction of her business; and Maggie Hoose upon the stand does not deny that she had knowledge and gave consent to the mortgage, but says she does not remember it. It was, however, a disputed question of fact upon the trial of the case whether Maggie Hoose had knowledge or consented to be execution of the mortgage by her brother-in-law, Morgan, for the $300 raised for the benefit of her brother, so that she became obligated to pay the $300, and upon that point the evidence was submitted to the jury by the court in his charge, in which he stated to them as follows:

" Now, there is one other question on which a defense has been made, and it goes to this section of the policy: ' If any change takes place in the title, interest, location, or possession of the property,' then, and in that event,

'the entire policy, and every part thereof, shall become void, unless consent in writing is indorsed by the company hereon, in each of the following instances;'—in such instance, whether after the assignment a mortgage was given for some $300, and the company asserts that that is a change in the title, and the interest of Maggie Hoose, which would avoid the policy. Well, gentlemen of the jury, I think that in the construction of this policy there must be a change in the actual title of Maggie Hoose, and that a mere change—and that the title, by George W. Morgan giving a mortgage—unless the title of Maggie Hoose was affected thereby would not be·a breach of that condition of the policy so as to forfeit the benefit which the plaintiff would otherwise be entitled to. I do not think there can be a forfeiture of the policy upon that ground, unless the title of· Maggie Hoose has been affected by that three hundred dollar mortgage. The mere fact that George W. Morgan gave a mortgage would not forfeit the policy, unless it was agreed between the parties that it should affect the contract interest of Maggie Hoose. Now, you have heard the testimony upon that point, and I say to you now, if you find that the contract interest of Maggie Hoose was affected, that is, that under the circumstances of the case she became obligated to pay that, by agreement between the parties themselves, then that, gentlemen of the jury, would constitute a forfeiture of this policy; but if it was merely the obligation of George W. Morgan, and if she herself was not obligated in any way there as between George W. Morgan and herself to pay that mortgage which he had put upon the property, why then, gentlemen of the jury, her interest would not be affected, and she would be entitled to recover, unless there is some other breach of the conditions of the policy."

At the time of the fire, George W. Morgan held a policy of insurance on the building, as owner, in the Cooper Insurance Company of $1,000; and Margaret Hoose held a policy in the Pacific Insurance Company, on the furniture, of $1,500; and Maggie Hoose held this policy in the Prescott Insurance Company, on the same building, as owner, of $1,000, and the contents, $2,000.

The policy sued upon contained near the close of the instrument the following stipulation:

"This policy is made and accepted upon the above express conditions, no part whereof can be waived, except in writing signed by the secretary."

Under the pleadings, the insurance company, upon the trial below, denied appellee's right to recover because she was not the sole and unconditional owner of the property, and she did not own the ground upon which the insured building stood in fee-simple; and also because of false statements in the proofs of loss furnished, as required by the policy; and, further, by the amendment made at the trial, because there had been a change of the policy-holder's interest after the issuing of the policy, without the knowledge and consent of the company, and without having such change indorsed upon the policy.

As to the first point of defense, the plaintiff claims that there is a liability because the defendant, through its agent, had notice at or prior to the issuing of the policy of the true state of the title. This claim is based upon the testimony of Mr. Brasell Hoose, who testified that he told Smalley & Sterling, in May, 1887,—one year before the policy in the suit was written,—who were then the agents of the Prescott Insurance Company, upon the occasion of their being applied to to issue a policy upon the property, of the situation of the title. He says that Smalley and Sterling both looked over the property, the house, stock, and everything, and were perfectly satisfied to take it.

"Q. What, if any conversation was had between them and Alfred Hoose, or yourself, or any of the persons there in the family, about the title?

"A. I told them that there was a mortgage on the property at the Mechanics' Bank of $1,200. We also told him that there was a deed running to George W. Morgan for $2,000 on the property,—money we had borrowed to

put in the building,—and then there was a title going back to my wife with that for two thousand more."

It may be stated that Smalley & Sterling, the agents of the Prescott Insurance Company at that time, who issued the policy to Margaret Hoose, was a firm composed Mr. Smalley and Howard W. Sterling; that this firm dissolved shortly after the policy was issued in 1887, and Howard W. Sterling continued for a time further as agent of the defendant, and when the present policy in suit was issued, namely, on May 19, 1888, the agent of the company was Howard W. Sterling, who was formerly one of the members of the firm. It was also a disputed fact upon the trial as to whether or not the agent of the defendant, at the time he insured the property, had been informed of the true state of the title, and at the plaintiff's request a special question was addressed to the jury, and answered by them as follows:

" Q. Did H. W. Sterling, the agent of the defendant, know, at the time the policy in this suit was issued, the condition of the title to the real estate on which the building mentioned in said policy stood, and of the mortgage thereon to the Mechanics' Bank of Detroit for the sum of twelve hundred (1,200) dollars?
"A. Yes."

The plaintiff insists that, under the facts and circumstances surrounding the making of the contract, and the fact that the agent was cognizant of the real situation of the title, the defense set up by the insurance company that the policy is void because the true state of the title is not indorsed thereon 'in writing ought not to prevail.

The defendant claims that the provisions of the policy referred to constitute a warranty, and that, if untrue, the policy is void; and the construction it places upon this instrument is that because the real interest of the party insured was not indorsed in writing upon the policy, and because it was not stated that she was *not* the sole and

unconditional owner of the building, and because it was not stated or indorsed upon the policy that the building stood on ground not owned in fee-simple by the assured, and because it was not indorsed on the policy that the assured was the equitable owner by virtue of a land contract to purchase, and because after the $300 mortgage was given by Morgan, it was not likewise indorsed upon the policy, each and every part of the policy is void, and of no effect.

It is therefore necessary for us to place a construction upon the policy before us. And, in construing warranties contained in policies of insurance, it may be asserted that the prime object to be reached is the intention of the parties, and, if that can be found, such intention must control. The rules in the interpretation of such warranties are the same as those which apply to the interpretation of other mercantile contracts. All written instruments, where the provisions are clear and unambiguous, are entitled to a literal interpretation, and wherever in a policy of insurance there is a clear breach of the warranty contained therein, however immaterial it may be, the policy will be avoided. It may be said that the warranties contained in the policy are somewhat different from representations made, in this: That while a representation may be satisfied with a substantial, or even an equitable, compliance, a warranty requires a strict and literal fulfillment. As it is stated by Mr. Arnould on Marine Insurance:

"Whatever the warranty avers must be literally true, and what it promises must be actually performed."

The reasons for such literal construction appear to be that insurance is granted on the faith of the accuracy of the statements made by the assured, the information concerning which is generally, and often exclusively,

within the knowledge of the assured; and it is only just to the insurer, when he asks for positive and accurate information, that it should be given him. It is in reliance upon the facts given that the contract of. insurance is made, and the purpose of requiring a warranty is to dispense with inquiry, and cast upon the insured the obligation that the facts shall be as he represents them. *Insurance Co. v. Huntzinger,* 98 Penn. St. 41.

But we must look at the situation of the parties, the condition of the thing insured, and what was said or done at the time the insurance was effected, in order to arrive at the intention of the parties, which, as before stated, must control in the construction of the warranties contained in the instrument. If the representations are in writing, that is the evidence of what they are. If no application is made in writing, and .no statements contained in any written application for insurance as to the risk and the subject-matter of it, then oral proof of such facts may be introduced. In the case under consideration, there was no written application required or given; the application was verbal, and representations, if any were made, were verbal. We have then here the case of a verbal application, and, under the findings of the jury, a true statement of the condition of the title, made by the assured to the defendant through its agent; and afterwards, with the knowledge of that title, the policy in suit issued, in the form and language sued upon, and delivered to and accepted by the plaintiff, or the plaintiff's assignor. It became a binding contract between the parties only from the time of delivery and acceptance, which occurred at the date of the policy, May 19, 1888.

In view of the claims now set up by the defendant with reference to the terms of the warranties contained in that instrument, it will be necessary to restate a little

more minutely what it contains.  In the first place, in consideration of the premium given, and so far as it affects the real-estate interest, the Prescott Insurance Company, of Boston, Mass.,—

"Insure Mrs. Margaret Hoose to the amount of  *  *  *  one thousand dollars on the two-story frame building, occupied as a grocery store and dwelling, situated on the north-west corner of Milwaukee and Beaubien street, Detroit, Mich.,  *  *  *  against all such immediate loss or damage sustained by the assured as may occur by fire to the property above specified, but not exceeding the interest of the assured in the property."

The policy upon its face does not contain any other or more minute description of the building insured than that above given.  It does not state whether Mrs. Hoose is the owner of the property insured, or whether she holds any other interest in it than the fee-simple.  It merely insured the specified property for $1,000 against loss or damage sustained by fire, but not exceeding the interest of the assured in the property, without stating what such interest was.  That Mrs. Hoose had an insurable interest in the building at that time is not disputed. Now, in the policy, next after the insuring clause, follows what is stated to be "warranty of the assured," as follows:

"The assured, by the acceptance of this policy, hereby warrants that any application, survey, plan, statement, or description connected with procuring this insurance, or contained in or referred to in this policy, is true, and shall be a part of this policy; that the assured has not overvalued the property herein described, nor omitted to state to this company any information material to the risk; and this company shall not be bound under this policy by any act of or statement made to or by any agent, or other person, which is not contained in this policy, or in any written paper above mentioned.

"It is also a part of this warranty that, if this policy shall be continued by renewal, it shall be considered as continued under the original representations; and that

any change in the risk, not made known to this company at the time it is so continued, shall render this policy void.

"This entire policy, and every part thereof, shall become void unless consent in writing is indorsed by the company hereon in each of the following instances, viz.:

"If the assured is not the sole and unconditional owner of the property; or if any building intended to be insured stands on ground not owned in fee-simple by the assured; or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, is not truly stated in this policy; or if any change take place in the title, interest, location, or possession of the property (except in case of succession by reason of the death of the assured), whether by sale, transfer, or conveyance, in whole or in part, or by legal process or judicial decree; or if the title or possession be now, or hereafter become, involved in litigation; or if this policy be assigned or transferred before a loss."

Now, the first important provision contained in the warranty is that any application or statement connected with procuring this insurance is true, and shall be a part of the policy. This provision makes the oral application and statement, made at the time the policy was applied for to the agent of the defendant, a part of the contract, and the finding of the jury in the case is conclusive upon the defendant that its agent was informed of the condition of the title to the real estate on which the building mentioned in the said policy stood, and of the mortgage thereon. The statement that the assured has not overvalued the property described does not apply to this policy, for it is not a valued policy; and nothing is claimed under the clause that the assured omitted to state to this company any information material to the risk, except as to the condition of the title to the real estate. The further provision is not a warranty, namely:

"This company shall not be bound under this policy by any act of or statement made to or by any agent, or

other person, which is not contained in this policy, or in any written paper above mentioned."

Nor under the circumstances in which this policy was made and delivered can it have any binding effect at all upon the assured, except as to statements and acts of agents and others after the delivery and acceptance of the policy; and this for the reason that the company is bound by verbal statements made to its agent upon which it issues insurance and receives the pay therefor. And it cannot, in the instrument by which it agrees to insure, repudiate the authority of the agent, or repudiate responsibility for his acts, as such.

But the defendant relies upon the further provision contained under this head to the effect that "this entire policy, and every part thereof, shall become void unless consent in writing is indorsed by the company hereon in each of the following instances," namely:

1. If the assured is not the sole and unconditional owner of the property.

2. If any building intended to be insured stands on ground not owned in fee-simple by the assured.

3. If the interest of the assured in the property, whether as owner or otherwise, is not truly stated in the policy.

4. If any change take place in the title, interest, location, or possession of the property, by sale, transfer, or conveyance, in whole or in part.

In construing this portion of the policy, the whole must be taken together. Now, the object sought to be accomplished by the person applying for insurance was to obtain indemnity against loss by fire of her interest in the building. If the insurance company which made out this policy upon the verbal application to its agent had desired to know what interest it was it was insuring, it should have stated it in that part of the policy pertaining

to the risk.  It was the intention of these parties to issue a valid and binding contract of insurance, valid and binding from the time of acceptance of the same by the assured, not that after it had been accepted by the assured then the assured should apply to the company and obtain its consent in writing indorsed on the policy, stating that the assured was not the sole and unconditional owner of the property, or stating that the building intended to be insured stood on ground not owned in fee-simple by the assured, or stating by indorsement on the policy the interest which the assured had in the property covered by the insurance; and yet the language of this part of the policy is that the entire policy, and every part thereof, shall become void, that is, void in the future, unless such consent in writing is indorsed by the company thereon.  To give any reasonable force and effect to this clause of the policy, it can only be held to apply to such changes as arise after the policy has been delivered and accepted, in the ownership of the property, or, if a building stood upon leased ground, the ownership of the building, and it does not apply to an existing state or condition of the property at the time the policy was issued.  It looks to the future for protection of the insurer, and not to the present, only in so far as the preceding portion of the policy is violated by a misstatement or concealment of any fact material to the risk. Construing this portion of the policy with the testimony in the case, and with the fact that the company issued the policy to Mrs. Hoose, without stating in the policy what her interest was, but insuring the building against loss by fire to an amount not exceeding the interest of the assured in the property, we think that it must be held that the defendant understood the condition of the title, and intended to insure whatever interest Mrs.

Hoose had which was insurable, not exceeding the amount named in the policy. We do not think that it would carry out the intention of the parties, or be a fair and just construction of this instrument, to hold that when it was issued and accepted by the assured, and the premium paid, it was void from that moment because it did not contain the indorsements required above.

The notice of defense interposed under the plea of the general issue does not rely upon any total failure to furnish proofs of loss as required by the policy, but the tenth clause under such notice sets forth that affidavit was made in support of her claim for loss and damage, and sets up that such affidavit was false, and specifies wherein it was so. The counsel for defendant now contend that there was no testimony introduced below showing that proofs of loss had been furnished, or that the condition of the policy in this respect had been waived, and insist that this should reverse the case. There is no exception in the record upon which this contention can be sustained. There were requests to charge made by defendant, but none of them refer to this point, and there are no assignments of error specifying this as a cause for reversal. It is claimed, however, to be covered by the request made by the defendant asking the court to instruct the jury that, under the law and the evidence in this case, the plaintiff cannot recover. If it was intended by this request to raise the question that the plaintiff could not recover for the reason that no proofs of loss had been furnished, the defect in the evidence should have been pointed out in the request. It is entirely too general to cover a defect of proof at the trial which if it had been mentioned could have been supplied if it had been overlooked. It is claimed by counsel for plaintiff that the point was not raised in the court below. We find no mention of it in the charge,

and the court seems to have passed specifically upon each breach of the contract relied upon by defendant.

With regard to the change of interest by the mortgage of $300, executed by Morgan, we think the question raised was fully covered by the instructions of the court to the jury in his charge above quoted.

We have examined all the errors assigned; those most relied upon have been mentioned. We find no errors in the others which call for a reversal of the judgment, and it is affirmed.

The other Justices concurred.