WILDS *v.* FIDELITY & DEPOSIT CO.

1. INSURANCE—BURGLARY INSURANCE—WARRANTIES IN POLICY NOT INTENDED TO BE PART THEREOF.

   Uncontradicted testimony that the agent of insurer, who examined the premises of insured and accepted burglary insurance risks, advised insured that, because his burglar alarm system was out of order and was not of the kind approved by insurer, he would have to charge the same premium as if he had none installed, *held*, to show that warranties or statements in the policy, afterwards issued, that insured's burglar alarm system would be maintained and tested and left duly connected at the close of each business day was not intended by either party to become part thereof.

2. SAME—WAIVER—ESTOPPEL.

   Knowledge by insurer's agent, who accepted burglary insurance risks, that insured's burglar alarm system was out of order and could not be made to work, constituted a waiver of the condition in the policy, afterwards issued, that insured's alarm system would be maintained, and tested and left connected at the close of each business day, and insurer was estopped thereafter from asserting the breach of such conditions.

3. SAME—INEQUITABLE TO ALLOW INSURER TO TAKE ADVANTAGE OF PROVISION IN POLICY NEITHER PARTY INTENDED IT TO CONTAIN.

   Where the agent who accepted burglary insurance risks for insurer knew that insured's burglar alarm system was out of order and could not be made to work, and charged the rate of premium where no alarm was installed, and a provision in the policy, afterwards issued, for maintenance of an alarm system by insured was inadvertently inserted by the clerk who wrote it up, without the knowledge or consent of either party, who did not know of it till after the loss, it would be inequitable to allow the insurer to take advantage of such provision to avoid the policy, under the circumstances.

[1]Burglary and Theft Insurance, 9 C. J. § 14; [2]Insurance, 32 C. J. § 565; [3]Id., 32 C. J. § 482 (Anno).

4. SAME—CONDITIONS IN POLICY—WAIVER BY AGENT.
   A provision in a burglary insurance policy that it should
   be void if any change was made therein without the writ-
   ten consent of insurer is inapplicable to a waiver by in-
   surer's agent that took place before the policy was issued,
   and at a time when insured had no knowledge of restric-
   tions on the agent's authority.

Error to Wayne; Webster (Arthur), J.    Submitted January 11, 1927.    (Docket No. 63.).    Decided June 6, 1927.

Assumpsit by Michael Wilds against the Fidelity & Deposit Company on a policy of insurance.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*Monaghan, Crowley, Reilley & Kellogg (O. Regis McGuirk,* of counsel), for appellant.

*Kerr, Lacey & Scroggie,* for appellee.

BIRD, J.    Plaintiff, in April, 1923, was a merchant tailor in the city of Detroit.    He carried a $2,000 policy of burglary insurance with defendant.    In December, 1923, he suffered two losses of merchandise by burglary amounting in value to over $2,000.    Plaintiff made proper proofs of loss and delivered them to the company, but it denied liability on the ground that plaintiff had violated express warranties or statements contained in the policy.    In the policy, under the head of "declarations," the following statements appear:

"Item 9:    A burglar alarm system is maintained, and will be tested and left duly connected at the close of each business day while this policy is in force.

"SEC. (*b*).    Such alarm protects all accessible windows (except stationary show windows) and all doors, transoms, skylights and other openings leading from the premises.    Yes.    The name of such burglar alarm system is Michigan Alarm System and the system is connected with an outside central station, or with an alarm gong on the outside of the premises which is

---

⁴Insurance, 32 C. J. 574.

operated in conjunction with the watch service of a regularly incorporated company. · Gong on outside of premises."

It was plaintiff's claim that these statements or warranties were waived by defendant, because it was informed before the policy was issued that, while a burglar alarm system was installed in the building, it was not maintained in working order, and that the owners of the system had had great difficulty in making it work and keeping it in repair.

The testimony shows that the application for the policy was oral. Plaintiff first talked with Mr. Miller, a solicitor of the company, and he notified his superior, Mr. Penn, who had charge of defendant's department of burglary insurance, examined and accepted risks, countersigned policies, and collected premiums. Mr. Penn came to plaintiff's premises, examined the risk, looked over the burglar alarm system and advised plaintiff that the burglar alarm system was out of order. Plaintiff agreed with him that it was out of order and was not reliable, and that the owners had had great difficulty in correcting its defects. Mr. Penn then said, in view of its condition and the further fact that it was not one of the systems approved by his company, he could not allow plaintiff any discount on the premium, and charged him the same rate he would have charged had there been no burglar alarm system installed. Mr. Penn accounts for those provisions being in the policy in this way: He took notes of the risk and handed them to the girl who writes up the policies, and she made it up in the usual way, and that he did not read it over after it was written up. Mr. Penn also stated he would have taken the risk just the same if no burglar alarm system had been installed, and would have taken it at the same rate of premium.

We think it appears without contradiction that the warranties or statements relied upon as a defense were

never intended by either party to become a part of the policy.    Mr. Penn gave as reasons why the burglar alarm system could not be taken into account that it was out of order, and because his company had not approved that particular system, and a fair inference from Mr. Penn's testimony is that the warranties or statements would have been stricken out if he had read it over before delivery.    They did not come to plaintiff's attention as he did not read the policy until after the loss.    Under these circumstances, it is extremely doubtful whether the statements and warranties relied on by defendant were ever a part of the policy, but, waiving that question, the knowledge that Mr. Penn had of the risk before issuing the policy would clearly bring it within those cases which hold that where the insurer, at the time of the issuance of a policy of insurance, has knowledge of the misrepresentation complained of, such knowledge would constitute a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions.    *Simpson* v. *Insurance Co.,* 184 Mich. 547; *Marx* v. *Insurance Co.,* 192 Mich. 497; *Blake* v. *Insurance Co.,* 194 Mich. 589; *Gordon* v. *Insurance Co.,* 197 Mich. 226 (L. R. A. 1918E, 402).

Before the policy was issued Mr. Penn had knowledge that a burglar alarm system had been installed, but was out of order, and therefore was not being maintained.    Plaintiff made no promises to repair, and no promise to repair was exacted of him.    Mr. Penn practically put the alarm system out of the contract because, as he said, the system was not recognized by his company, and by demanding the same rate of premium as though no alarm system had been installed.    Mr. Penn admits he charged plaintiff a rate of premium that he would have charged if the alarm system had never been installed.    With this advance knowledge and these admissions, it will be

manifestly inequitable to allow defendant to take advantage of declarations that neither plaintiff nor Mr. Penn knew the policy contained until after the loss.

Counsel make the point that Mr. Penn could not, under the following provisions, waive any conditions or requirements of the policy:

"Changes in Risk:    O. This policy shall be void if changes in the conditions or circumstances of the risk are made without the written consent of the company, and in such event the unearned premium shall be refunded to the assured upon demand.

"Changes:    V. No condition, provision or limitation of this policy shall be waived or altered except by written indorsement attached hereto, signed by the president, a vice-president, or secretary of the company; nor shall notice to any agent, nor shall knowledge possessed by any agent or by any other person, be held to effect a waiver or change in any part of the contract."

The waiver that took place in this case, if any were made, took place before the policy was issued, and, therefore, that provision is not applicable, as it is not shown that at that time plaintiff had any knowledge of restrictions on the agent's authority.

It is said in 3 Joyce on Insurance (2d Ed.), § 1973, that:

"Assurer may also be estopped or there may be a waiver by reason of its agent's knowledge or acts, notwithstanding provisions in the policy as to the manner in which conditions may be waived by the agent."

This doctrine is elaborated and made plain in the cases of *Crouse* v. *Insurance Co.*, 79 Mich. 249; *Russell* v. *Insurance Co.*, 80 Mich. 407; and *Hoose* v. *Insurance Co.*, 84 Mich. 309 (11 L. R. A. 340).

We think the case was rightly disposed of in the trial court, and the judgment will be affirmed.

SHARPE, C. J., and SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.    FELLOWS, J., concurred in the result.