## JOHNSON v. AMERICAN FIDELITY FIRE INSURANCE COMPANY.

1. INSURANCE—ISSUANCE OF POLICY—INSTRUCTIONS—AUTOMOBILES—TITLE.

Evidence supported trial judge's conclusion that defendant's duly authorized agent had not issued policy on which suit was brought in accordance with directions given to him by the soliciting agent in that person to whom plaintiff was selling the truck under title-retaining arrangement, rather than plaintiff, was named as the insured.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur, Insurance § 132 *et seq.*
[2, 3] 29 Am Jur, Insurance § 832 *et seq.*

2. SAME—PREMIUMS—POLICY—ESTOPPEL.

An insurer which has full knowledge of the circumstances involved in the writing of a fire insurance policy on a truck and fails to make the recitals in the policy correspond with the facts, while receiving and retaining the premiums, is estopped from offering its own incorrect recital of the facts in order to defeat liability.

3. SAME—FIRE POLICY—TRUCKS—INSURABLE INTEREST—ESTOPPEL.

Insurer which issued fire insurance policy covering truck, then being sold to named insured under a title-retaining arrangement, not in compliance with motor vehicle act relative to transfer of title, with full knowledge of fact that such was the arrangement, may not claim nonliability because vendor who paid the premium had no insurable interest in the truck, the insurer being estopped to make such claim after occurrence of loss some 8 months later and after acceptance of premiums (CLS 1956, § 257.233).

Appeal from Montcalm ; Davis (Morris K.), J. Submitted October 9, 1957. (Docket No. 22, Calendar No. 47,429.)   Decided March 6, 1958.

Action by Clyde Johnson against American Fidelity Fire Insurance Company, a New York insurance corporation, on insurance contract following loss of truck by fire. Judgment for plaintiff. Defendant appeals. Affirmed.

*Benjamin W. Franklin,* and *Brake & Miel,* for plaintiff.

*Thomas J. Whinery,* for defendant.

EDWARDS, J.  This is a suit by the owner of a Diesel truck against defendant fire insurance company which had issued a policy of insurance on the truck under circumstances which will be enumerated.

The truck was destroyed by fire on June 3, 1953, near Washington Courthouse, Ohio. Testimony indicates that the truck was worth $4,000 before the fire, whereas, after the fire, its value was $150. It was insured for $3,500 of the loss.

The case was tried before Circuit Judge Morris K. Davis, in Montcalm county, without a jury. Judge Davis entered judgment for plaintiff in the amount of $3,500, plus interest.

At the trial below, and on appeal here, defendant urges that plaintiff is not entitled to recover because the insurance policy was issued to a party who had no insurable interest in the vehicle. Judge Davis granted judgment on the ground that the facts pertaining to the issuance of the contract estopped defendant from presenting this defense.

We will turn now to the facts on which this dispute hinges:

Plaintiff Johnson, just prior to the issuance of the insurance contract in dispute, entered into an oral agreement with a produce trucker by the name of Willis Boozer for Boozer to buy the truck. The trial court found that under this agreement plaintiff was to retain title until Boozer had completed paying for the truck, and that the provision of the motor vehicle act requiring transfer of title was not complied with. CLS 1956, § 257.233 (Stat Ann 1952 Rev § 9.1933).

The first attempt in relation to insuring the truck after the oral agreement referred to above was made by Boozer in a telephone conversation with one Carl Mapes of the Carl Mapes Insurance Agency on October 8, 1952. No policy, however, was issued on the basis of this telephone conversation since apparently Boozer did not come in to the Mapes Agency to pay the premium which he promised.

Johnson testified that he called Mapes to check on whether or not the truck was insured and Mapes told him he hadn't sent the policy because Boozer hadn't paid the premium. At this point Johnson agreed to pay the premiums and Mapes then sent, on his stationery, a letter, which is exhibit 5A in this proceeding, addressed to the American Underwriters Agency, which is reproduced below:

30

EXHIBIT 5A

RE    .95,  57.65

**NATIONAL UNION INSURANCE COMPANIES**
PITTSBURGH 13, PENNSYLVANIA

CARL N. MAPES    CARL N. MAPES, JR.
CARL N. MAPES AGENCY
410 BUILDING & LOAN BLDG.
PHONE 60219
GRAND RAPIDS 2, MICHIGAN

October 8th, 1952

American Underwriters Agency
City

Gentlemen:

Re: CLYDE JOHNSON

Effective October 8th, please issue a policy for the above named as follows:

Loss Payable to → Clyde Johnson
Six Lakes, Mich.
Produce Trucker - Self

1950 Mack Diesel Tractor
S# EQT-1D-7725
M# END510288
Bot used 10/52  $5500.00
New cost $10,500.00

| | | |
|---|---|---|
| $3500 Fire | @1.95 | $68.25 |
| 3500 Theft | .20 | 7.00 |
| 3500 Wind | .10 | 3.50 |
| 250. Ded. Coll. | | 210.00 165. |

343 75

Enclosed please find our check in the amount of $57.65 covering 20% of the premium.

The above Tractor is being sold on contract to Willis Boozer, Six Lakes, Mich.

Send us a certificate for Boozer and a copy for our files.

Yours truly,

CARL N. MAPES AGENCY

*(Plaintiff's Exhibit 5-A)*

Amos Nordman, resident agent at Grand Rapids for defendant American Fidelity Fire Insurance Company, who testified he was authorized to write insurance contracts for said company, indicated that he received this letter in the course of business and that the handwritten notations thereon were in his handwriting.

The trial judge in his opinion stated as follows:

"When the policy was issued it named Boozer as the insured with loss payable clause to the plaintiff. I am perfectly satisfied that Nordman did not follow the directions of Mapes in applying to defendant for insurance."

It appears to us that exhibit 5A, plus Nordman's testimony, warrants the judge's conclusion.

The record further discloses that when the policy was delivered to plaintiff Johnson, he immediately called the Mapes Agency and protested the fact that it was issued in Boozer's name. He testified, "I told him the tractor was in my name and he said that the policy was holding as it was."

Johnson's testimony in this regard is borne out by plaintiff's exhibit 2 written to plaintiff by Mapes after the policy was issued.

### Exhibit 2

"October 16, 1952.,

"Mr. Clyde Johnson,
Six Lakes, Mich.

*"Dear Mr. Johnson:*

In accordance with our telephone conversation, we have written a policy covering fire, theft, wind and $250.00 deductible collision insurance on the 1950 Mack Diesel Tractor. Policy is enclosed together with a certificate, so you can have a copy of it.

As per our conversation, you stated you would mail us 20% down payment at once. This will amount to

$68.75, and we should have this by return mail, as we had to advance our money to the Co. in order to put the insurance in force the night that you called. We don't ordinarily do this, but we did it for you, although we would not have done it for Mr. Boozer, as he has stated several times he would see us on such a date and never showed up.

Balance of the premium can be financed over a period of 6 months if desired, but we must know at once.

Yours truly,
CARL N. MAPES AGENCY

We have facilities for writing liability and property damage and cargo on a gross receipts basis, or on individual units.

CNM"

Johnson testified further that after receipt of this letter and the policy, and after his phone call of protest had received Mapes' reassurance, he then paid the premium referred to above.

It is obvious that there was no misrepresentation of fact nor withholding of material information from the insurer shown in this record. In effect, the trial judge so found:

"With reference to the policy, it is clear that it was not issued as ordered. It is also clear that it was not so issued because of the action of Nordman, the duly authorized agent of the defendant. When plaintiff drew to the attention of Mapes that the policy was not issued to the plaintiff as insured, Mapes assured plaintiff that he was protected under the policy. Plaintiff so testified without objection. His testimony was not disputed. Plaintiff had every reason to believe that Mapes was a duly authorized agent of defendant since defendant issued the policy after an application had been made to Mapes.

"Defendant claims Mapes was merely a solicitor and had no power to vary the terms of the contract. I am not grounding my decision on the theory that

Mapes had authority to vary the terms of the contract but on the ground that the action of Mapes and Nordman estopped the defendant from denying liability on the ground that Boozer had no insurable interest.   It is noteworthy that Nordman made no satisfactory explanation as to why he disregarded the instructions he received when the policy was applied for.

"Defendant makes much of the fact that plaintiff did not tell defendant's agent that he (plaintiff) was violating the law in failing to transfer the certificate of title.   Defendant was not prejudiced by such failure.   Defendant's agents were told about the contract of sale."

There is a long line of Michigan cases which hold that where an insurance company has full knowledge of the circumstances involved in the writing of a policy and fails to make the recitals in that policy correspond with the facts, while receiving and retaining the premiums, the insurer is estopped from offering his own incorrect recital of the facts in order to defeat liability.   *North American Fire Insurance Co.* v. *Throop,* 22 Mich 146 (7 Am Rep 638) ; *Aurora Fire & Marine Insurance Co.* v. *Kranich,* 36 Mich 289 ; *Hoose* v. *Prescott Insurance Company of Boston,* 84 Mich 309 (11 LRA 340) ; *Crossman* v. *American Insurance Company of Newark, N. J.,* 198 Mich 304 (LRA1918A, 390) ; *Baker* v. *Northern Assurance Co.,* 214 Mich 540 ; *Coverdill* v. *Northern Insurance Co. of New York,* 243 Mich 395 ; *Ruggirello* v. *Detroit Automobile Inter-Insurance Exchange,* 272 Mich 44.

In the *North American Case* cited above, Justice COOLEY gave this exposition of the Court's reasoning (pp 158, 159) :

"We cannot, in construing a contract of fire insurance, overlook the customary manner in which such contracts are obtained.   The form which the negotiation apparently assumes is this: The one

party applies to the other for insurance, and agrees in his written application that the facts material to the risk are as therein set forth. The other party issues the policy, assuming the risk on condition that the facts are as represented. The appearance, therefore, is of 2 parties meeting on equal terms, who might be supposed to frame their respective propositions and undertakings with a view to the protection of their own interests. But, in fact, both application and acceptance are usually drawn by the insurer himself, or his agent, into whose hands, as a person understanding the business thoroughly, and, therefore, knowing what should and what should not be inserted in the writings, the assured places himself and his interests. We do not undertake to say that this is always the case, but this course is sufficiently general to warrant our taking notice of it as usual and customary. The insurer occupies the position of an expert who assumes to understand what the papers should contain. Being an expert he undertakes to draw a contract between himself and another person who will generally be ignorant of the exact requirements, and under such circumstances the insurer is under a strong moral obligation to so draft the papers as to make them assure to the opposite party the protection for which he pays his money. If there has been no fraud and no concealment, but a full and frank statement of all the facts, and the insurer has framed the papers to suit himself, in view of all the circumstances, the law would justly be subject to the reproach of favoring deception and fraud, if the insurer was allowed to retain the premium, and at the same time repudiate the contract, for his own failure to make its recitals correspond exactly with the facts."

As has been indicated heretofore, the trial judge, sitting as the finder of facts in this case, found that accurate information pertaining to the writing of this policy had been furnished to the agent authorized to write same. If the policy had been written in ac-

cordance with the instructions given by plaintiff to Mapes, and by Mapes to Nordman, there would be no question pertaining to its validity. On the authority cited above, we find that the trial judge was correct in holding that Nordman's issuance of a policy at variance from the facts supplied to him pertaining to the title holder estopped defendant in this case from reliance upon the defense of no insurable interest.

Defendant relies primarily upon *Bayer* v. *Jackson Bank & Trust Co.*, 335 Mich 99.

The *Bayer Case* was not an insurance case. Plaintiff in that case was seeking specific performance of a contract for sale wherein the certificate of title had not been transferred to him, in violation of the statute, CLS 1956, § 257.233 (Stat Ann 1952 Rev § 9.1933). This Court denied specific performance on the grounds that violation of the statute invalidated the sales contract. There is, however, nothing in the opinion to suggest that the invalidity of the sales agreement would also encompass an insurance contract entered into by one of the parties; and we decline to extend the principle of the *Bayer Case* beyond the immediate parties to the sales contract.

In this case the defendant insurance company knew all the facts and made its contract with its eyes wide open. There is no public policy which suggests that, after it has accepted premiums under these circumstances, it should avoid the responsibilities it assumed.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, and VOELKER, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.