**STRATFORD SCHOOL DISTRICT,**
**Plaintiff, Appellee,**

v.

**EMPLOYERS REINSURANCE CORPORATION, Defendant, Appellant.**

**No. 96–1620.**

United States Court of Appeals, First Circuit.

Heard Jan. 8, 1996.

Decided Jan. 30, 1997.

Charles W. Grau, Concord, NH, with whom David P. Slawsky and Upton, Sanders & Smith were on brief for defendant–appellant.

Bruce W. Felmly, Manchester, NH, with whom Jeanmarie Papelian and McLane, Graf, Raulerson & Middleton were on brief for plaintiff-appellee.

Before SELYA, Circuit Judge, ALDRICH, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BAILEY ALDRICH, Senior Circuit Judge.

This is a declaratory action brought to determine the rights of Stratford [New Hampshire] School District ("Stratford"), insured under a "claims-made" errors and omissions policy issued by Employers Reinsurance Corporation ("Employers"). Both parties moved for summary judgment, and the court ruled for Stratford. On this appeal Employers asserts that Stratford's claim for coverage for a suit brought on behalf of Crystal Buffington, *post*, matured within the policy exclusion definition prior to the policy's issuance, and that, in any event, the policy was voidable because of false answers in the application. We affirm.

Starting at the beginning, we accept the facts, recited in Employers' brief as undisputed, most favorable to it. *Morrissey v. Boston Five Cents Savings Bank*, 54 F.3d 27, 31 (1st Cir.1995). One Harry Hikel became a music teacher at Stratford in 1979. In 1983 Stratford conducted an investigation and held a hearing to review allegations that Hikel had inappropriately hugged and kissed female students. After the hearing the Stratford School Board voted to reprimand him severely. A reprimand letter was delivered to him in January 1984. Stratford did not notify State Child Protective Services in accordance with N.H.Rev.Stat.Ann. § 169–C:29.[1] Hikel left Stratford in 1986.

His next employer was the Lakeway Elementary School in Littleton, New Hampshire. According to one of his students there, Crystal Buffington, he began sexually molesting her during the fall of 1990 and continued to do so until the fall of 1992. In 1993 the Manchester Union Leader reported this, although not identifying Crystal, and asserted that the Department of Education was investigating charges that Hikel had sexually abused students when he taught in Littleton. For present purposes we assume that this came to Stratford's attention. Thereafter, on October 3, 1993, a Grafton County Grand Jury issued a subpoena in connection with an investigation of criminal sexual misconduct of Harry Hikel in the Littleton School District, seeking Stratford's records on Hikel. Stratford received the subpoena on October 4. On October 8 it applied for the present policy.

While obviously the subpoena was a strong reminder that other such conduct might occur, the question is whether it suggested to Stratford (of which there is no evidence), or should have suggested, something more immediately troublesome. So contending, Employers complains—in terms of warranty—of Stratford's negative answers in the policy application to questions 25 and 26:

25. Has the applicant, Board and/or its employees been involved in or have any knowledge of any pending federal, state or local legal actions or proceedings, including EEOC, against the entity, its board members, or employees within the last ten years? If yes, attach details stating nature of claim, date of claim, loss date, loss payments and disposition, carrier handling claims, etc.

26. Are there any circumstances indicating the probability of a claim or action known by any person to be covered by this insurance? If yes, attach details.

In view of the lack of analysis in Employers' brief we regard 25 as being included in 26 and ask what claims, or "circumstances," to quote question 26, affecting Stratford, the subpoena might be thought to suggest. Certainly no criminal proceedings. Nor could it be thought that Stratford's former students were attempting to reactivate a cause of action arising from behavior that had occurred a decade ago outside of Littleton. Very likely Hikel was charged with new conduct and the grand jury, before indicting, wished to look at the whole picture. Nothing more had yet happened. But might some imaginative lawyer representing some student in connection with this new conduct, think of claiming

---

1. This statute contains no language giving causes of action to children who could prove personal injury that might have been avoided had it been observed. In *Marquay v. Eno*, 139 N.H. 708, 662 A.2d 272, 278 (1995), the court held that the statute created no personal rights. We are not moved by Employers' contention that this ruling should not be applied retroactively.

against Stratford for not having published [2] Hikel's prior behavior? Anything is possible, but how likely, let alone probable?

Employers cites no authority contradicting our belief that a personal claim would be wholly frivolous. The New Hampshire court's refusal to recognize such rights even in the statute cited *supra*, n. 1, confirms this. If an insurance applicant is told he has to conceive of, and report, every possibility that someone "might" (Employers' brief) bring a frivolous law suit, Employers' solicitors would starve. It is because there are possibilities that people take out insurance. The application announced the standard for reporting—not possibility, but probability.

The application, however, was not the only standard-setter. The policy itself, by its terms, provides that it does not cover if "the Insured ha[d] become aware of a proceeding, event or development which has resulted in or *could* in the future *result* in the institution of a claim against the Insured. . . ." (Emphasis supplied.) *"Possibly* could result?" *"Reasonably* could result?" [3] *"Probably* could result?" Even apart from the principle that ambiguities in insurance contracts are to be resolved against the insurer, *Trombly v. Blue Cross/Blue Shield of New Hampshire–Vermont*, 120 N.H. 764, 423 A.2d 980, 985 (1980), it makes business sense here to construe the exclusion clause together with the application questionnaire. *Cf. Commercial Union Assurance Co. v. Gilford Marina, Inc.*, 119 N.H. 788, 408 A.2d 405, 407 (1979) (contradictory clauses in an insurance contract must be interpreted to reflect the reasonable expectations of the insured). Hence we take probable. For the insurer to go the other way, and say we do not cover matters of which you had notice, even though that notice was too remote for you to have to tell us about it, makes no sense; indeed, it would seem affirmatively misleading. We can not think the facts charged Stratford of a probability that some Littleton student would sue it.

Finally, Employers' makes a claim of malice. This requires no comment.

*Affirmed.*

---

**2.** At the risk, incidentally, of incurring a claim for defamation, depending on how the duty is conceived.

**3.** The New Hampshire case from which the court drew the more limited word "reasonable" involved different policy language.