NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0357n.06
Filed: May 25, 2007

No. 06-1632

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANN ARBOR PUBLIC SCHOOLS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DIAMOND STATE INSURANCE | ) | COURT FOR THE EASTERN |
| COMPANY, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before:     KEITH and COLE, Circuit Judges; and OLIVER, District Judge.[*]

**PER CURIAM.** Plaintiff-Appellant Ann Arbor Public Schools ("AAPS") appeals the

district court's denial of its motion for summary judgment and grant of summary judgment in favor

of Defendant-Appellee Diamond State Insurance Company ("Diamond State"). For the reasons set

forth below, we **AFFIRM** the district court's judgment.

**I.**

In April 2000, eleven employees filed a class action grievance against AAPS alleging race

discrimination in employment. Approximately eight months later, six of these employees filed

administrative charges of discrimination with the Equal Employment Opportunity Commission

("EEOC"). On March 27, 2001, these six employees were issued right-to-sue letters by the EEOC,

which were copied to AAPS. At some point, these employees also filed complaints with the

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern
District of Ohio, sitting by designation.

Michigan Department of Civil Rights ("MDCR").

Later in 2001, AAPS requested quotes for legal liability insurance from the Aprill Agency, Inc. AAPS applied for insurance with Deerfield Insurance Company; and on August 16, 2001, it applied for insurance with Diamond State. The Diamond State application contained several questions regarding pending complaints or investigations. Question 14 of the application inquired whether the educational entity or any person to be insured under the policy had been subject to any investigation by a regional, state, or federal agency within the past five years. In response to this question, AAPS wrote "EEOC/State-dismissed as unsubstantiated. 3 EEOC claimants were issued right to sue letters by the Department of Justice." (J.A. at 429). In a coverage comparison sheet dated July 24, 2001, Aprill Agency informed AAPS that both the Diamond State policy and the Deerfield Insurance Company policy excluded "[p]rior claims, prior & pending litigation, knowledge of occurrence that may reasonably be expected to result in claim." *Id*. at 476.

AAPS ultimately selected a claims-made Educators Legal Liability insurance policy from Diamond State, for the policy period of August 1, 2001 to August 1, 2002. Generally, the Policy covered "loss and defense expenses in excess of the stated deductible and up to the stated limit of liability for any claim due to a Wrongful Act to which this policy applies[.]" *Id.* at 246. Under the Policy, "Wrongful Act means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by the Educational Entity or [other insureds]." *Id.* at 249. The Policy included several liability exclusions. "Exclusion N" provides that the Policy does not apply to any loss or defense expense for any claim or circumstance "based on any circumstance or fact known at the time of the application which any Insureds could reasonably expect would result in a

claim[.]" *Id.* at 247. The Policy also contains a provision stating that Diamond State will pay for AAPS's loss and defense expenses for a claim due to a covered wrongful act only if the "[c]laim is first made against the Insureds during the policy period[.]" *Id.* at 246. Under the Policy, a "[c]laim means any written demand for money damages to which [the] policy applies." *Id.* at 247.

On September 20, 2001, seven of the employees that had filed the aforementioned class action grievance (six of whom had also filed the above-referenced EEOC complaints) filed suit against AAPS in the Washtenaw County Circuit Court, in a case styled *Brown v. Bd. of Educ. of the Ann Arbor Public Schools*, No. 01-1106 CL, asserting multiple federal and state claims alleging race discrimination and retaliation. AAPS timely notified Diamond State of the lawsuit and requested coverage under the Policy. In a letter dated January 2, 2002, Diamond State denied AAPS's request for coverage with respect to six of the seven plaintiffs on the grounds that AAPS had received notice, before applying for insurance, of the EEOC charges filed by these six plaintiffs. On June 4, 2002, Diamond State sent another letter reiterating its denial and adding a reference to Exclusion N, as an additional basis to deny coverage. AAPS settled the *Brown* lawsuit in December 2003. Diamond State has continued to refuse to provide coverage.

On September 28, 2004, AAPS filed suit against Diamond State in the district court alleging breach of contract and seeking a declaratory judgment. On March 1, 2005, Diamond State filed a motion to dismiss or, alternatively, for summary judgment. On September 7, 2005, AAPS filed a cross-motion for summary judgment. On March 21, 2006, after a hearing on the parties' motions, the district court issued an order denying AAPS's motion for summary judgment and granting summary judgment in favor of Diamond State. *Ann Arbor Pub. Schs. v. Diamond State Ins. Co.*, 421

F. Supp. 2d 1034 (E.D. Mich. 2006). Specifically, the district court held that Exclusion N barred coverage because at the time of the application for insurance, AAPS could reasonably expect a claim would result from the employees' filing of a class action grievance and EEOC charges. *See id*. at 1037-38. The present appeal timely ensued.

## II.

"This Court reviews a grant of summary judgment de novo." *Howard ex rel. Howard v. Bayes*, 457 F.3d 568, 571 (6th Cir. 2006). Because the denial of AAPS's cross-motion for summary judgment was "decided on purely legal grounds[,]" we also review that decision de novo. *Citizens Ins. Co. of Am. v. MidMichigan Health ConnectCare Network Plan*, 449 F.3d 688, 691 (6th Cir. 2006).

## III.

AAPS argues that the district court erred in holding that Exclusion N bars coverage because (1) the risk of the *Brown* lawsuit was disclosed prior to issuance of the Policy and Diamond State failed to specifically and clearly exclude the disclosed risk from coverage, and (2) the Policy as a whole is ambiguous and thus should be interpreted in favor of coverage. AAPS further argues, in the alternative, that the district court erred in holding that AAPS reasonably could have expected that the prior EEOC charges would result in a claim because the ninety day statute of limitations for filing a federal lawsuit had elapsed and that issues of fact remain as to whether AAPS could have reasonably expected the lawsuit. We reject AAPS's arguments for the following three reasons.

### 1.

First, Diamond State specifically and clearly excluded coverage for the *Brown* lawsuit

through the incorporation of Exclusion N in its Policy.

Jurisdiction being based on diversity of citizenship, 28 U.S.C. § 1332, we must apply the substantive law of Michigan. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under Michigan law, the proper interpretation of an insurance policy and determination of whether the policy language is ambiguous are questions of law to be determined de novo by the court. *Klapp v. United Ins. Group Agency*, *Inc.*, 663 N.W.2d 447, 451 (Mich. 2003); *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999). Further, in Michigan, "[a]n insurance policy is construed in accordance with well-settled principles of contract construction[,]" but "remain subject to statutory regulations." *Farmers Ins. Exch. v. Kurzmann*, 668 N.W.2d 199, 203 (Mich. App. 2003).

AAPS is correct that in certain circumstances where a risk that is within the general coverage of an insurance policy has been disclosed to the insurer prior to issuance of the policy, the risk will be covered unless the insurer specifically and clearly excludes the disclosed risk from coverage. *See, e.g.*, *Johnson v. Am. Fid. Fire Ins. Co.*, 88 N.W.2d 913 (Mich. 1958); *Wilds v. Fid. Deposit Co.*, 214 N.W. 118 (Mich. 1927); *Crossman v. Am. Ins. Co. of Newark*, 164 N.W. 428 (Mich. 1917). Here, it is highly doubtful that AAPS's statement on the insurance application—that "EEOC/State-dismissed as unsubstantiated. 3 EEOC claimants were issued right to sue letters by the Department of Justice"— could be considered a sufficient disclosure of the risk of the lawsuit brought by the six *Brown* plaintiffs. However, even assuming that AAPS's application statement was a sufficient disclosure, Diamond State clearly excluded the related risk from coverage through Exclusion N.

In Michigan, an insurance company may "'define or limit the scope of coverage as long as the policy language'" is unambiguous and does not contravene public policy or law. *Kurzmann*, 668

N.W.2d at 203-04 (quoting *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 505 (Mich. 1995)). The language of an insurance contract is ambiguous if it is subject to more than one reasonable interpretation. *Klapp*, 663 N.W.2d at 453; *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999). Exclusion N provides that the "policy does not apply to any loss or defense expenses for any claim . . . based on any circumstance or fact known at the time of the application which any Insureds could reasonably expect would result in a claim[.]" (J.A. at 246-47).

AAPS contends that Exclusion N is ambiguous but provides little (if any) explanation or conflicting interpretation of the provision. In support of its argument, AAPS relies on a First Circuit case, *Stratford Sch. Dist. v. Employers Reins. Corp.*, 105 F.3d 45 (1st Cir. 1997). The policy involved in *Stratford* "provide[d] that it does not cover if 'the Insured ha[d] become aware of a proceeding, event or development which had resulted in or *could* in the future *result* in the institution of a claim against the Insured." *Id*. at 47. The Court of Appeals for the First Circuit found this clause to be ambiguous because reading the policy, along with the application questionnaire, it was unclear what matters were excluded: those that *possibly* could result, those that *reasonably* could result, or those that *probably* could result. *Id.* However, *Stratford* is inapposite to the present case because the Diamond State Policy's Exclusion N clearly delineates the applicable standard, excluding claims of which "Insureds *could reasonably expect would* result[,]" (J.A. at 247) (emphasis added), and thus does not pose the ambiguity present in *Stratford.*

> The court must give the language contained in the policy its plain and ordinary
> meaning so that technical and strained constructions are avoided. . . . Where the
> language of an insurance policy is clear and unambiguous, it must be enforced as

written. Courts must be careful not to read an ambiguity into a policy where none exists.

*Century Sur. Co. v. Charron*, 583 N.W.2d 486, 488 (Mich. App. 1998). Moreover,

> [e]xclusionary clauses in insurance polices are strictly construed in favor of the insured. Coverage under a policy is lost if any exclusion in the policy applies to an insured's particular claims. Clear and specific exclusions must be given effect because an insurance company cannot be liable for a risk it did not assume.

*Hayley v. Allstate Ins.* Co., 686 N.W.2d 273, 275 (Mich App. 2004); *see Charron*, 583 N.W.2d at 488; *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992).

A plain reading of Exclusion N— read both separately and within the backdrop of the Policy as a whole— presents only one reasonable interpretation: Claims based on circumstances or facts known at the time of the application that AAPS could reasonably expect would result in a claim are excluded from the Policy. Accordingly, even when construing the exclusionary clause in favor of AAPS, Exclusion N "must be given effect" because it is clear, specific, and not ambiguous. *Hayley*, 686 N.W.2d at 275.[1]

The fact that Diamond State could have provided a more clear and specific exclusionary clause, such as the one provided by Deerfield Insurance Company, is immaterial. An exclusionary clause need not be the most clear and specific possible; it need only be unambiguous and *sufficiently* clear and specific. *See Mich. Tp. Participating Plan v. Pavolich*, 591 N.W.2d 325, 328 (Mich. App. 1998) ("[I]f a contract, even an inartfully worded or clumsily arranged contract, fairly admits of but one interpretation, it may not be said to be ambiguous or fatally unclear.").

---

[1] AAPS does not argue in their briefs that Exclusion N contravenes public policy, and we find no indication of any public policy violation. *See generally Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 790 (7th Cir. 1992).

**2.**

Second, the Policy read as a whole is not ambiguous.

AAPS argues that the Policy is ambiguous and therefore should be interpreted in favor of coverage. However, AAPS does not provide any explanation for why it considers the contract, as a whole, to be ambiguous and does not point to any provisions that contradict each other. As it does not appear that any provisions of the contract "irreconcilably conflict with each other" or "are capable of conflicting interpretations[,]" *Klapp*, 663 N.W.2d. at 453, we conclude that the Policy is not ambiguous.

**3.**

Third, AAPS reasonably could have expected that the EEOC charges would result in a claim, and no issue of fact remains as to this matter.

AAPS argues, in the alternative, that the district court erred in holding that AAPS reasonably could have expected that the prior EEOC charges would result in a claim because the ninety day statute of limitations date for filing a federal lawsuit had elapsed. This argument is without merit, and the district court properly rejected it below. The fact that the EEOC right-to-sue letters stated that claimants had ninety days to file suit in federal court and that this deadline had passed at the time AAPS made the insurance application does not diminish the fact that AAPS should have reasonably expected that *state* claims would be filed at a later date. In fact, the EEOC right-to-sue letters specifically stated, "The time limit for filing suit based on a state claim may be different." (J.A. at 159).

Moreover, the fact that the EEOC and MDCR did not find the employees' claims to be

substantiated does not provide any reasonable basis to not expect that a claim would be eventually brought by the employees. The filing of EEOC and state administrative charges are well-recognized precursors to a lawsuit, irrespective of the outcome at the administrative level. Further, the receipt of notice of the MDCR investigations and filing of the class action grievance also put AAPS on notice to reasonably expect a prospective state lawsuit.

## IV.

For the aforementioned reasons, we **AFFIRM** the district court's judgment.