U.S. District Court
No. 93-198

YVONNE MARQUAY & a.

v.

MICHAEL ENO & a.

July 11, 1995

*Van Dorn & Cullenberg,* of Hanover (*Sheldon M . Katz* on the briefs and orally), for the plaintiffs.

*Stebbins, Bradley, Wood & Harvey,* of Hanover (*David H. Bradley* on the joint briefs and orally), for defendant Bonnie Robinson.

*Devine, Millimet & Branch, P.A.,* of Manchester (*Cynthia A.Satter* on the joint briefs and orally at rehearing), for defendant David Miller.

*Robert L. Hermann, Jr. Law Office,* of Manchester (*David Woodbury* and *Mary Ann Mueller* on the joint briefs) for defendants Mascoma Valley Regional School District, School Administrative Unit #62, School Administrative Unit #32, John Carr, Daniel Whittaker and Patricia Rocke.

*McNeill & Taylor, P.A.,* of Dover (*Malcolm R. McNeill, Jr.* and *Lynne Dennis* on the joint brief) for defendant Richard Bressett.

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Theodore Wadleigh* on the joint supplemental brief) for defendants Jean Sullivan, William Bellion, Barbara K. Mitchell, and Terri Pelletier.

*Bouchard & Mallory, P.A.,* of Manchester (*Christine Friedman* on the brief and on the joint supplemental brief), for defendants Michael Eno and Brian Erskine.

*Daschbach, Kelly & Cooper,* of Lebanon (*Deborah J. Cooper* on the joint supplemental brief).

*Kidder & Lawson,* of Laconia (*Bradley F. Kidder* on the joint supplemental brief), for defendant John Carr.

*Brian Adams, pro se,* filed no brief.

*James F. Allmendinger,* of Concord, by brief for NEA-New Hampshire, as *amicus curiae.*

HORTON, J. This case comes to us by way of certified State law questions from the United States District Court for the District of New Hampshire (*McAuliffe,* J.). *See* SUP. CT. R. 34.

The plaintiffs are three women who were students in the Mascoma Valley Regional School District. In separate complaints filed in the district court, each plaintiff alleges that she was exploited, harassed, assaulted, and sexually abused by one or more employees of the school district. According to the complaints, Lisa Burns was sexually abused by Brian Erskine, a high school teacher, beginning in her sophomore year and continuing beyond graduation; Jennifer Snyder was sexually abused by Michael Eno, a sports coach and teacher, beginning in the seventh grade and continuing beyond graduation; and Yvonne Marquay was sexually abused by Eno beginning in the seventh grade and by Brian Adams, also a teacher, beginning in high school. Each plaintiff also alleges that a host of school employees, including other teachers, coaches, superintendents, principals and secretaries either were aware or should have been aware of the sexual abuse. None of the complaints alleges where any of the sexual abuse occurred, or whether it occurred during school hours.

The plaintiffs seek damages against the "abusing employees," the "non-abusing employees," the school district and the school administrative units on a variety of State and federal theories. State law claims against the abusing employees are based on negligence, assault and battery, and due process and equal protection violations of the State Constitution. State claims against the non-abusing employees, who knew or should have known of the abuse, and against the school district and school administrative units are based on negligence; violation of RSA 169-C:29 (1990), the child abuse reporting statute; violation of RSA 354-A:8 (1984) (recodified at RSA 354-A:17 (Supp. 1994)), the State anti-discrimination statute; violation of due process and equal protection guarantees of the State Constitution; and *respondeat superior.* After the defendants moved to dismiss various State law claims, the district court certified to us the following questions:

(1) Does N.H. REV. STAT. ANN § 169-C:29 create a private right of action such that plaintiff students may recover against defendant teachers, coaches, superintendents, principals, secretaries, school districts and school administrative units based on their failure to report alleged incidents of sexual abuse and misconduct by defendant teachers/coaches Eno, Adams, and Erskine, if they knew, or if they had reason to know of such abuse and misconduct?

(2) Does New Hampshire common law impose a duty upon defendant teachers, coaches, superintendents, principals, secretaries, school districts and school administrative units to protect plaintiff students by reporting alleged sexual misconduct to the proper authorities or taking other protective measures, if they knew, or render them liable if they should have known, that plaintiffs were being sexually harassed, assaulted or abused by defendants in positions such as those occupied by defendants Eno, Adams and Erskine?

(3) If the Court finds that the identified defendants owed a duty to report the alleged conduct of Eno, Adams and Erskine under N.H. REV. STAT. ANN. § 169-C:29 and/or New Hampshire common law, does that duty also apply to known conduct occurring after plaintiffs' graduation from high school?

(4) Does the alleged failure of defendant teachers, coaches, superintendents, principals, secretaries, school districts and school administrative units to report the alleged sexual misconduct of Eno, Adams and Erskine, or, does the alleged conduct of Eno, Adams and Erskine, if proved, constitute a violation of plaintiffs' right to enjoy life and liberty and to seek and obtain happiness as guaranteed by Part 1, Art. 2 of the New Hampshire Constitution so as to give rise to a private right of action and right of recovery in favor of plaintiff students?

(5) Does the alleged failure of defendant teachers, coaches, superintendents, principals, secretaries, school districts and school administrative units to report the alleged sexual misconduct of Eno, Adams, and Erskine, constitute a violation of the plaintiff students' rights to equal protection under the law as guaranteed by Part 1, Art. 2 of the New Hampshire Constitution so as to give rise to a private right of action and right of recovery in favor of plaintiff students?

*I. Relationship of Statutory Violation to Civil Liability*

The first certified question asks whether RSA 169-C:29, which, under penalty as a misdemeanor, requires that any person "having reason to suspect that a child has been abused or neglected shall report the same [to the State]," creates a private right of action in favor of abused children against those who have violated the statute's reporting requirement. In light of the discussion in the parties' briefs, answering this question requires consideration of a broader issue that this court has yet to address comprehensively; namely, the relationship between statutory duties and civil liability.

At first glance, our cases appear to be inconsistent on this issue. *Everett v. Little Construction Co.,* 94 N.H. 43, 46 A.2d 317 (1946), instructs that "the violation of a penal statute is an actionable wrong only when the Legislature expressly so provides . . . , or when the purpose and language of the statute compel such inference . . . ." *Id.* at 46, 46 A.2d at 319 (quotation omitted). We have also held, however, that "a causal violation of a statutory standard of conduct constitutes legal fault in the same manner as does the causal violation of a common-law standard of due care," *Moulton v. Groveton Papers Co.,* 112 N.H. 50, 52, 289 A.2d 68, 71 (1972), and that "[t]he breach of a statutory duty results in liability . . . when the plaintiff is in a class the statute is designed to protect and the injury is of the type that the statute is intended to prevent," *Island Shores Estates Condo. Assoc. v. City of Concord,* 136 N.H. 300, 307, 615 A.2d 629, 633 (1992). The plaintiffs assert that *Everett* effectively has been overruled and that because the legislature intended to protect school children from the type of abuse alleged, civil liability may be based on violation of the statute. The defendants argue that *Everett* remains controlling, but acknowledge that several of our subsequent opinions have predicated civil liability on the violation of a statute; they suggest that we have yet to delineate clearly when civil liability can be based on the violation of a statute.

██ The apparent inconsistency in our jurisprudence arises from a failure to distinguish two distinct bases of civil liability: (1) statutorily expressed or implied causes of action; and (2) negligence *per se.* The former, recognized in *Everett,* is the principle that whether or not the common law recognizes a cause of action, the plaintiff may maintain an action under an applicable statute where the legislature intended violation of that statute to give rise to civil liability. The doctrine of negligence *per se,* on the other hand, provides that where a cause of action does exist at common law, the standard of conduct to which a defendant will be held may be defined as that required by statute, rather than as the usual reasonable person standard. *See Broderick v. Watts,* 136 N.H. 153, 160, 614 A.2d 600, 604 (1992). The doctrine of negligence

*per se,* however, plays no role in the creation of common law causes of action. Thus, in many cases, the common law may fail to recognize liability for failure to perform affirmative duties that are imposed by statute. *But cf. Weldy v. Town of Kingston,* 128 N.H. 325, 330–31, 514 A.2d 1257, 1260 (1986).

■ Recognizing this distinction, we first inquire whether the plaintiff could maintain an action at common law. *See* Morris, *The Role of Criminal Statutes in Negligence Actions,* 49 COLUM. L. REV. 21, 21–22 (1949); Thayer, *Public Wrong and Private Action,* 27 HARV. L. REV. 317, 329–31 (1914); *see also* Linden, *Tort Liability for Criminal Nonfeasance,* 44 CANADIAN B. REV. 25, 27, 41 (1966); Fricke, *The Juridical Nature of the Action Upon the Statute,* 76 LAW Q. REV. 240, 265 (1960). Put another way, did the defendant owe a common law duty of due care to the plaintiff? If no common law duty exists, the plaintiff cannot maintain a negligence action, even though the defendant has violated a statutory duty. If a common law duty does exist and there is an applicable statute, the defendant, in a negligence action, will be held to the statutory standard of conduct if the plaintiff is in a class the legislature intended to protect, and the harm is of a type the legislature intended to prevent. This is the negligence *per se* test we articulated in *Groveton Papers, Island Shores,* and many other cases. Whether or not a common law duty exists, however, a plaintiff may maintain an action directly under the statute if a statutory cause of action is either expressed or implied by the legislature. This is the principle we recognized in *Everett.*

Although the legal commentators have seized on the distinction discussed above—*i.e.,* whether a common law cause of action exists—it is one that few courts from other jurisdictions have appreciated. One of those few, the Oregon Supreme Court, articulated the distinction and its significance in language that we need not improve upon:

> [A]n initial distinction must be made between (1) cases in which liability would be based upon violation of a statutory duty when there is also an underlying common law cause of action, and (2) cases in which liability would be based upon a violation of a statute when there is no underlying common law cause of action.
>
> A common example of a case of the first type is an action for damages for negligence in which it is contended that violation of a duty imposed by statute is negligence per se in that the statutory duty is the standard of conduct of a reasonably prudent person, although other elements of a cause of action must still be shown. The test for determining

whether violation of the statute constitutes negligence per se in such a case . . . is (1) whether the injured person is a member of the class intended by the legislature to be protected, and (2) whether the harm is of the kind which the statute was intended to prevent.

[T]he approach to be taken by this court is somewhat different in cases in which there is no underlying common law cause of action and when the court is called upon to, in effect, "create" or "recognize" a new tort. In such a case it must still be determined whether the plaintiff is a member of the class protected by the statute and whether the harm inflicted is the type intended to be protected against. The court must undertake further analysis, however, by an examination of the statute to determine whether there exists any explicit or implicit legislative intent that a violation of a statute should give rise to a tort cause of action.

*Bob Godfrey Pontiac, Inc. v. Roloff,* 630 P.2d 840, 844–45 (Or. 1981) (citations omitted).

Turning to the present case and keeping in mind the distinction between negligence *per se* and statutory causes of action under a statute, we ask two questions: (1) whether the legislature intended civil liability to flow from violation of the reporting statute; and (2) whether the doctrine of negligence *per se* should play any role in this case.

■■ We hold that the reporting statute does not support a private right of action for its violation because we find no express or implied legislative intent to create such civil liability. First, we note that where the legislature has intended that civil liability flow from the violation of a statute, it has often so provided. *See, e.g.,* RSA 358-A:10 (1984) (deceptive trade practices). Where, as here, civil liability for a statutory violation would represent an abrupt and sweeping departure from a general common law rule of nonliability, we would expect that if the legislature, which is presumed to recognize the common law, *see Niemi v. Railroad,* 87 N.H. 1, 9–10, 173 A. 361, 366 (1934), intended to impose civil liability it would expressly so provide. Here there was no expressed intent. Nor can we divine any implied intent. The reporting statute was originally enacted in 1965, applying only to physicians. Laws 1965, 193:1. It was amended in 1971 to extend the reporting requirement to all persons and to provide a $200 fine for its violation. Laws 1971, 531:2. In 1973, the penalty section was amended to provide that a violation would constitute a misdemeanor. Laws 1973, 532:8. Despite specific amendment of the penalty section, nothing in the legislative history suggests that civil liability was contemplated, let alone intended. In sum, considering that imposition of civil liability for all reporting violations would represent a

sharp break from the common law and neither the statute nor the legislative history directly reveal any such intent, we are unwilling to say that violation of the child abuse reporting statute supports a private right of action. *Accord Fischer v. Metcalf,* 543 So. 2d 785 (Fla. Dist. Ct. App. 1989) (finding no cause of action under similar Florida reporting statute); *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.,* 819 P.2d 587 (Kan. 1991) (no cause of action under Kansas reporting statute).

■ We now turn to the negligence *per se* question, considering the relevance of the reporting statute in cases where a common law cause of action exists based on an alleged failure to exercise a recognized duty of reasonable supervision. As discussed previously, use of a statute to establish the standard of care is limited to situations where a common law cause of action exists, and then, only if the statute is "applicable." Whether a statutory standard is applicable depends, in part, on whether the type of duty to which the statute speaks is similar to the type of duty on which the cause of action is based. *See Island Shores,* 136 N.H. at 307, 615 A.2d at 633; *Bob Godfrey Pontiac,* 630 P.2d at 844–45. Because the duty to which the statute speaks—reporting of abuse—is considerably different from the duty on which the cause of action is based—supervision of students—we hold that a violation of the reporting statute does not constitute negligence *per se* in an action based on inadequate supervision of a student.

## II. Common Law Causes of Action

The plaintiffs argue that all school district employees have a common law duty to protect students whom they know or should know are being sexually abused by another school employee. We hold that some employees owe such a duty while others do not. The duty owed by some defendants is based on their relationship to the students; for other defendants the duty derives from their relationship to the alleged abusers.

### A. Duties Based on Relationship to the Students

As a general rule, a person has no affirmative duty to aid or protect another. *See Walls v. Oxford Management Co.,* 137 N.H. 653, 656, 633 A.2d 103, 104 (1993). Such a duty may arise, however, if a special relationship exists. *See, e.g., Murdock v. City of Keene,* 137 N.H. 70, 72, 623 A.2d 755, 756 (1993). "The relation of the parties determines whether any duty to use due care is imposed by law upon one party for the benefit of another. If there is no relationship, there is no duty." *Guitarini v. Company,* 98 N.H. 118, 119, 95 A.2d 784, 785 (1953) (quotation omitted). The plaintiffs argue that a special relationship exists between educators and school children, imposing a duty upon

educators to protect students whom they know or should know are being sexually abused by another school employee.

■ "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a . . . duty to the other." RESTATEMENT (SECOND) OF TORTS § 314A at 118 (1965). "[A] child while in school is deprived of the protection of his parents or guardian. Therefore, the actor who takes custody . . . of a child is properly required to give him the protection which the custody or the manner in which it is taken has deprived him." *Id.* § 320 comment b at 131. We agree with the majority of courts from other jurisdictions that schools share a special relationship with students entrusted to their care, which imposes upon them certain duties of reasonable supervision. *See, e.g., Wagenblast v. Odessa Sch. No. 105-157-166J,* 758 P.2d 968, 973 (Wash. 1988); *District of Columbia v. Doe,* 524 A.2d 30, 32 (D.C. 1987); *Fazzolari v. Portland School Dist. No. 1J,* 734 P.2d 1326, 1337 (Or. 1987); *Chavez v. Tolleson Elementary School Dist.,* 595 P.2d 1017, 1020 (Ariz. Ct. App. 1979); *Hoyem v. Manhattan Beach City School Dist.,* 585 P.2d 851, 853 (Cal. 1978); *Pratt v. Robinson,* 349 N.E.2d 849, 852 (N.Y. 1976); *McLeod v. Grant County School Dist. No. 128,* 255 P.2d 360, 362 (Wash. 1953). The scope of the duty imposed is limited by what risks are reasonably foreseeable. "As a general rule, a defendant will not be held liable for negligence if he could not reasonably foresee that his conduct would result in an injury or if his conduct was reasonable in light of what he could anticipate." *Walls,* 137 N.H. at 656, 633 A.2d at 105 (quotation omitted).

Major factors influencing our conclusion that a special relationship exists between schools and students include the compulsory character of school attendance, *see* RSA 193:1, I (Supp. 1994), the expectation of parents and students for and their reliance on a safe school environment, and the importance to society of the learning activity which is to take place in public schools, *see Claremont School Dist. v. Governor,* 138 N.H. 183, 187, 635 A.2d 1375, 1378 (1993). For these reasons, we conclude that "the social importance of protecting the plaintiff[s'] interest outweighs the importance of immunizing the defendant from extended liability." *Libbey v. Hampton Water Works Co.,* 118 N.H. 500, 502, 389 A.2d 434, 435 (1978) (brackets and quotation omitted).

■ ■ School attendance impairs both the ability of students to protect themselves and the ability of their parents to protect them. It is this impairment of protection from which the special relationship between school and student arises and from which the duty of supervision flows. We decline, however, to accept the plaintiffs' argument that every school employee shoulders a personal duty simply by virtue of receiving a paycheck from the school district. Instead, the duty falls upon

718

those school employees who have supervisory responsibility over students and who thus have stepped into the role of parental proxy. Those employees who share such a relationship with a student and who acquire actual knowledge of abuse or who learn of facts which would lead a reasonable person to conclude a student is being abused are subject to liability if their level of supervision is unreasonable and is a proximate cause of a student's injury.

While the impairment of protection creates an affirmative duty, it also circumscribes the limits of that duty. Thus the existence of a duty is limited to those periods when parental protection is compromised. That is not to say that employees with a special relationship to a student may not be liable for injuries that occurred off school premises or after school hours, if the student can show that the employee's negligent acts or omissions, within the scope of his or her duty, proximately caused injury to the student. *See Hoyem,* 585 P.2d at 858. This is a question for the jury. *Murray v. Boston & Maine R. R.,* 107 N.H. 367, 374, 224 A.2d 66, 72 (1966).

■ We note that the principal or superintendent rarely has primary supervisory authority over a student. Because, however, it is the school to which parents turn over custody of their children and from which they expect safety and because the superintendent and principal are charged with overseeing all aspects of the school's operation, we hold that a duty of supervision is owed to each student. Where the principal or superintendent knows or should know that a particular school employee poses a threat to a student, entrustment of the student to the care of that employee will not satisfy the duty of reasonable supervision.

### B. Duties Based on Relationship to Abusing Employees

Up to this point, we have discussed only personal liability of school employees based on a special relationship to the student. We turn now to the question of liability based on a relationship to the allegedly abusing school employees.

We have previously recognized a cause of action against an employer for negligently hiring or retaining an employee that the employer knew or should have known was unfit for the job so as to create a danger of harm to third persons. *See Cutter v. Town of Farmington,* 126 N.H. 836, 840–41, 498 A.2d 316, 320 (1985); *LaBonte v. National Gypsum Co.,* 113 N.H. 678, 681, 313 A.2d 403, 405 (1973). This cause of action is distinct from one based upon the doctrine of *respondeat superior* and is a theory of direct, not vicarious, liability. *Cutter,* 126 N.H. at 840, 498 A.2d at 320. In *Cutter,* we cited RESTATEMENT (SECOND) OF AGENCY § 213 (1958), which provides that "[a] person conducting an activity through servants or agents is

subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the employment of improper persons."

> [An agent] may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him into contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity.

RESTATEMENT (SECOND) OF AGENCY § 213 comment *d*; *see also* RESTATEMENT (SECOND) OF TORTS § 302B comment *e* (1965) ("a reasonable man is required to anticipate and guard against the intentional, or even criminal, misconduct of others . . . where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct").

A cause of action for negligent hiring or retention, however, does not lie whenever an unfit employee commits a criminal or tortious act consistent with a known propensity. As several courts have properly recognized, the plaintiff must establish "some [causal] connection between the plaintiff's injury and the fact of employment." *Dieter v. Baker Service Tools,* 739 S.W.2d 405, 408 (Tex. Ct. App. 1987); *see also Bates v. Doria,* 502 N.E.2d 454, 458 (Ill. App. Ct. 1986). This causal requirement is necessary because "[w]ere such a connection not required, an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as employee." *Bates,* 502 N.E.2d at 459.

The requirement of causal connection to employment does not mean, however, that the employee's criminal conduct must have been performed within the scope of employment, during working hours, or even while the perpetrator was an employee. *See Henley v. Prince George's County,* 479 A.2d 1375, 1383 (Md. Ct. Spec. App. 1984); *Bates,* 502 N.E.2d at 458; *Dieter,* 739 S.W.2d at 408. Liability exists not because of when the injury occurs, but because "the actor has *brought into contact or association* with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct." RESTATEMENT (SECOND) OF TORTS § 302B comment *e* (emphasis added). Thus, employers have been held liable for criminal conduct by off-duty employees or former employees where such conduct was consistent with a propensity of which the employer knew or should have known, and the association between the plaintiff and the employee was occasioned by the employee's job. *See, e.g., Ponticas v. K.M.S. Investments,* 331 N.W.2d 907 (Minn. 1983) (apartment owner liable for rape of tenant at knifepoint by resident manager in middle of the night after resident manager learned during repair visit

that plaintiff's husband was away); *McGuire v. Arizona Protection Agcy.,* 609 P.2d 1080 (Ariz. Ct. App. 1980) (burglar alarm installation company liable where former employee who had installed alarm in plaintiff's home later broke in and stole items after disconnecting alarm); *see also Coath v. Jones,* 419 A.2d 1249 (Pa. Super. Ct. 1980); *Welsh Mfg., Div. of Textron v. Pinkerton's,* 474 A.2d 436 (R.I. 1984); *Harvey Freeman & Sons v. Stanley,* 378 S.E.2d 857 (Ga. 1989).

██ ██ Applying these legal principles to the present case, we find that a school district or school administrative unit (school) has a duty not to hire or retain employees that it knows or should know have a propensity for sexually abusing students. Where the plaintiff can establish that the school knew or reasonably should have known of such a propensity, the school will generally be liable for the foreseeable sexual abuse of students by that employee. Liability based on negligent hiring or retention is not limited to abuse that occurs during the school day. A school may be liable for abuse of a student by a school employee outside of school hours where there is a causal connection between the particular injury and the fact of employment. Also, a school can only be liable for injuries suffered *after* it knew or should have known of the employee's propensity. In any event, liability will only lie if the employee's conduct was tortious.

██ Some school officials may also be subject to personal liability under negligent hiring or retention theories. Those officials who have hiring and firing authority with respect to subordinates must exercise that authority reasonably, and, once such an official becomes aware or should have become aware that a subordinate was sexually abusing a student, retention could be unreasonable.

██ Finally, we consider the negligence *per se* question—*i.e.,* whether the reporting requirement of RSA 169-C:29 should be engrafted onto the standard of care in an action based on negligent hiring or retention. While we held in section I that the reporting statute is not applicable in an action based on negligent supervision, we hold that it is applicable in a negligent hiring or retention action. Accordingly, under these circumstances, failure to report abuse in accordance with the statute could give rise to liability, provided the plaintiff can show that reporting would have prevented the subsequent abuse.

*III. Existence of Duties Beyond Graduation*

The third question asks whether any statutory or common law duties extend beyond the graduations of the plaintiffs. We do not address this issue with respect to "statutory duties" because we do not recognize a separate private right of action under the reporting statute. The common law duties based on special relationships to the

plaintiffs, discussed in section II, are circumscribed by the scope of that relationship, which will not ordinarily extend beyond graduation.

 Duties based on a relationship to the abusing employees, however, may give rise to liability for abuse that occurs after graduation. As discussed above, liability based on negligent hiring or retention is circumscribed by the requirement that there be a causal connection between the fact of employment and the injury. Thus, liability might exist for abuse after school hours or after graduation where, but for the hiring and retention of the abusing employee, there would have been no relationship between abuser and victim.

*IV. Constitutional Causes of Action*

The fourth and fifth questions ask whether the alleged facts state violations of the guarantees of part I, article 2 of the State Constitution and whether such violations give rise to causes of action for damages—*i.e.*, "constitutional torts." Specifically, the fourth question refers to the right of enjoying life and liberty, while the fifth question refers to article 2's equal protection guarantees. We need not decide whether the alleged facts, if proved, constitute a violation of either of these rights, because even assuming that they would, we hold that no private cause of action for damages would be available.

The issue before us is circumscribed by two considerations: the settled principle that a denial of a constitutional right "demands some vindication in the law," *Rockhouse Mt. Property Owners Assoc. v. Town of North Conway,* 127 N.H. 593, 598, 503 A.2d 1385, 1388 (1986); *see also* N.H. CONST. pt. I, art. 14, and the recognition that our constitution does not specify remedies for its violation. As we recognized in *Rockhouse,* once an infringement has been established, the issue becomes one of the "appropriate way to redress the denial." *Rockhouse Mt. Property,* 127 N.H. at 598, 503 A.2d at 1388. While this court ultimately has the authority to fashion a common law remedy for the violation of a particular constitutional right, we will avoid such an extraordinary exercise where established remedies—be they statutory, common law, or administrative—are adequate. *See id.* at 598–99, 503 A.2d at 1388; *see also Bush v. Lucas,* 462 U.S. 367 (1983) (refusing to recognize constitutional tort for federal employee demoted for public comments in light of civil service remedies notwithstanding that such remedies "provide[ ] less than complete remedy for the wrong"); *Kelley Property Dev. v. Town of Lebanon,* 627 A.2d 909, 922 (Conn. 1993); *Provens v. Stark Cty. MRDD,* 594 N.E.2d 959, 965 (Ohio 1992); *Corum v. University of North Carolina,* 413 S.E.2d 276, 291 (N.C. 1992). Where no established remedy exists or the

established remedies would be meaningless, however, we will not hesitate to exercise our authority to create an appropriate remedy.

*Rockhouse* illustrates the application of these principles. In *Rockhouse,* landowners who were seasonal residents of North Conway petitioned the town to lay out a road in their development. After the selectmen denied the request, the landowners sued the selectmen individually for damages, claiming that the selectmen had violated their equal protection rights by denying their petition simply because they were not year-round residents. The only established remedy available to the plaintiffs was the statutory right to seek *de novo* review of the selectmen's decision in superior court. This statutory remedy was available in *all* cases where selectmen refused to lay out a road, regardless of whether the selectmen's refusal was due to "mere error or an [unconstitutional] intent to discriminate." *Rockhouse,* 127 N.H. at 598, 503 A.2d at 1388. Even though the statutory remedy made no provision for damages and would "not provide any additional recompense when the denial has resulted from unconstitutional conduct rather than mere error," we held that the established remedy was adequate and refused to create any additional remedy. *Id.* at 599, 503 A.2d at 1389.

■■■ Turning to the present case, we hold that the established common law remedies available to the plaintiffs provide an adequate remedy for the harms alleged, and therefore we decline to recognize a new "constitutional tort." To begin with, the plaintiffs can recover in tort from the abusers themselves. Those school officials who had authority over the abusers may be liable for injuries inflicted after they became aware of the abuse. Further, as discussed in section II, liability may fall on an employee charged with the supervision of a student. Finally, the school district or school administrative unit may be liable under a *respondeat superior* theory for those torts of its employees that were performed in the course of their employment. This array of common law remedies may not be as "complete" as would be an additional constitutional tort, but we nonetheless hold that it is adequate. We therefore decline to recognize a new constitutional tort under these particular alleged facts.

*Remanded.*

JOHNSON, J., did not sit; BOIS, J., retired, sat by special assignment under RSA 490:3; all concurred.