Duguay v. Androscoggin Valley Hosp.   CV-95-112-SD  01/25/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Marie Duguay


    v.                                          Civil No. 95-112-SD


Androscoggin Valley Hospital;
Northcare, Inc.;
Robert Gilligan, individually
 and as Vice President of Fiscal
 Services for Northcare, Inc.;
Don Saunders, individually
 and as President of
 Northcare, Inc.



                         O R D E R


    In this civil action, plaintiff Marie Duguay alleges she

was sexually harassed by her immediate supervisor.  She seeks

recovery from defendants Androscoggin Valley Hospital ("the

Hospital"); Northcare, Inc., the parent company of the Hospital;

Robert Gilligan, Vice President of Fiscal Services for Northcare,

Inc.; and Donald Saunders, President of Northcare, Inc.  The

complaint contains the following claims: (1) sexual harassment in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e, et seq. (1994) (Count I); (2) intentional and negligent

infliction of emotional distress (Count II); (3) enhanced

compensatory damages (Count III); and (4) violation of New

Hampshire's Law Against Discrimination, Revised Statutes Annotated (RSA) 354-A, et seq. (1955 & Supp. 1994) (Count IV).

Presently before the court are two motions to dismiss various counts of the complaint--one is submitted by Gilligan, the other submitted by the remaining three defendants. Plaintiff objects to both motions.

Factual Background and Procedural History

This case arises from the sexual harassment allegedly experienced by Duguay while working at the Hospital[1]. Duguay claims that Gilligan, her supervisor, sexually harassed her over an extended period of time beginning in January of 1988 and continuing through May 25, 1994. Complaint[2] ¶¶ 18-24. She charges that Gilligan habitually and repeatedly made sexually suggestive statements to her that had no connection to her employment duties. Id. ¶ 24. Specifically, Duguay claims, among other things, that Gilligan, on separate occasions, talked to her

---

[1]Duguay is currently Director of General Accounting for defendant Northcare, which became the employer of the Hospital's administrative staff in July 1992. Complaint ¶ 15; Plaintiff's Amended Objection to Defendants' Motion to Dismiss at 2.

[2]All references to the complaint relate to the complaint filed by Duguay on March 3, 1995. She filed a later complaint on May 10, 1995, seeking to consolidate her claims with those of another plaintiff; however, the court ruled the cases were to proceed separately. See Order of May 15, 1995.

2

about the freckles on her back, invited her to go on an overnight trip unrelated to work, and asked her to model a bathing suit for him. Id. ¶¶ 20, 21. Duguay further alleges on another occasion Gilligan blew in her ear and pulled on her clothing. Id. ¶ 20.

After Duguay spoke with Saunders about Gilligan's conduct, Saunders investigated her claim. Id. ¶¶ 25, 26. However, Duguay claims Saunders did not follow through on his investigation and failed to determine whether the situation had improved. Id. ¶ 26.

Duguay filed a charge of discrimination with the New Hampshire Commission for Human Rights on or about December 1, 1994. Id. ¶ 2. The complaint was then forwarded to the Equal Employment Opportunity Commission (EEOC), which issued a Notice of Right to Sue on December 21, 1994. Id. ¶ 10. Plaintiff filed the instant action on March 3, 1995, within ninety days of the issuance of the Notice of Right to Sue.


## Discussion

### 1. Rule 12(b)(6) Standard

To resolve defendants' Rule 12(b)(6) motion, the court must "take the well-pleaded facts as they appear in the complaint, extending plaintiff every reasonable inference in [her] favor." Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 187 (1st Cir.

3

1993) (citing <u>Coyne v. City of Somerville</u>, 972 F.2d 440, 442-43 (1st Cir. 1982)).  A Rule 12(b)(6) dismissal is appropriate "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'"  <u>Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.</u>, 958 F.2d 15, 17 (1st Cir. 1992) (quoting <u>Correa-Martinez v. Arrillaga-Belendez,</u> 903 F.2d 49, 52 (1st Cir. 1990)).

## 2. The Title VII Claim

The Hospital moves to dismiss the Title VII claim because Duguay failed to file an administrative charge with the EEOC within 300 days of the alleged discriminatory practice as required.[3]  The Hospital contends it ceased to be plaintiff's employer on July 5, 1992, when Northcare took control of the

_____

[3]Title VII provides in relevant part:

> [I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed [with the EEOC] by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . .

42 U.S.C. § 2000e-5(e)(1) (1994).  Accordingly, as plaintiff initially filed a charge with the New Hampshire Commission for Human Rights, the 300-day period applies.

4

Hospital's administrative staff.  According to the Hospital, a claim against it should be filed with the EEOC no later than 300 days after the date of the transition.

Plaintiff responds that the Hospital remained her "employer" within the meaning of Title VII even after she technically became employed by Northcare.  Plaintiff is correct that, under a number of scenarios, the Hospital could have remained her "employer" after the switch.  For example, the Hospital could be considered her "employer" under Title VII if it "exercised control over an important aspect of [her] employment."  See Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of N.E., Inc.,[4] 37 F.3d 12, 17 (1st Cir. 1994) (citing Spirt v. Teachers Ins. & Annuity Ass'n, 691 F.2d 1054, 1063 (2d Cir. 1982), vacated and rem'd on other grounds, 463 U.S. 1223 (1983), reinstated and modified on other grounds, 735 F.2d 23 (2d Cir. 1984), cert. denied, 469 U.S. 881 (1984)).[5]

_____

[4]Title VII provides, "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ."  42 U.S.C. § 2000e(b) (1994).  Carparts interpreted similar language contained within the Americans with Disabilities Act, 42 U.S.C. 12111(5)(A), but looked to Title VII for guidance.

[5]The Hospital could also be plaintiff's "employer" if it acted as Northcare's agent after the transition.  See Carparts, supra, 37 F.3d at 17-18.

5

The Hospital's argument relies on information outside the pleadings, to wit, that the Hospital ceased to be the plaintiff's employer when Northcare took over the administrative staff in July 1992. The complaint does not mention the Northcare transition, but rather alleges generally that plaintiff worked at the Hospital. Complaint ¶¶ 14, 15. As the parties rely upon matters outside the pleading,[6] the court will treat defendants' motion as one for summary judgment on this issue alone. Accordingly, the court gives the parties sixty days from the date of this order to conduct discovery on the limited issue of whether the Hospital continued to "employ" plaintiff within the meaning of Title VII after July 1992; dispositive motions will be due thirty days thereafter.

---

[6]Rule 12(b), Fed. R. Civ. P., provides in pertinent part,

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

## 3.  Intentional and Negligent Infliction of Emotional Distress

### a.  Northcare

Northcare argues that the exclusivity provision of the Workers' Compensation Law bars plaintiff's claims for intentional and negligent infliction of emotional distress.  Northcare is the parent company of the Hospital, and at all relevant times employed defendants Gilligan and Saunders.  Complaint ¶¶ 16, 17. The Workers' Compensation Law precludes employees from suing employers for personal injuries arising out of the employment relationship.  See RSA 281-A:12,[7] Censullo v. Brenka Video, Inc., 989 F.2d 40, 44 (1st Cir. 1993) (interpreting New Hampshire law); accord O'Keefe v. Associated Grocers of New England, 120 N.H.

---

[7]The "exclusivity provision" of the workers compensation law in existence at the time of plaintiff's injury provides in relevant part:

> An employee of an employer subject to this chapter shall be conclusively presumed to have accepted the provisions hereof and on behalf of himself, or his personal or legal representatives, to have waived all rights of action whether at common law or by statute or otherwise:
> I.  Against the employer or the employer's insurance carrier; and
> II.  Except for intentional torts, against any officer, director, agent, servant or employee acting on behalf of the employer or the employer's insurance carrier.

RSA 281:12 (1987), amended by RSA 281-A:8 (Supp. 1994).

7

834, 835-36, 424 A.2d 199, 201 (1980) ("The statute clearly prohibits an employee from maintaining a common-law action against his employer for personal injuries arising out of the employment relationship."). Under the statute, "personal injury" includes claims for emotional distress. Censullo, supra, 989 F.2d at 43 (citing Bourque v. Town of Bow, 736 F. Supp. 398, 404 (D.N.H. 1990)); Kopf v. Chloride Power Electronics Inc., 882 F. Supp. 1183, 1191 (D.N.H. 1995) (exclusivity clause "bars an employee's common-law action for personal injuries, including the intentional infliction of emotional distress arising out of an employment relationship") (and cases cited therein). From the language of RSA 281-A:12, and the available case law, it follows that plaintiff is barred from seeking recovery from her employer for both the intentional and the negligent infliction of emotional distress claims. See RSA 281-A:12 (employee of employer subject to Workers' Compensation Law is conclusively presumed "to have waived all rights of action whether at common law or by statute or otherwise" against the employer) (emphasis added); Kopf, supra, 882 F. Supp. at 1191 (intentional infliction of emotional distress claim precluded by Workers' Compensation Law). Plaintiff acknowledges that the Workers' Compensation Law would prevent her from going forward with a claim against her employer for a co-employee's torts. See, e.g., Censullo, supra,

8

989 F.2d at 44 ("'when an intentional injury is committed by a co-employee the better rule is that an action in damages will not lie against the employer'") (quoting 2A Arthur Larson, The Law of Workmen's Compensation § 68.00 (1992)). However, she argues the exclusivity provision would not apply here because she has alleged that Northcare is primarily (as opposed to vicariously) liable for intentional and negligent infliction of emotional distress.[8]

Plaintiff relies upon a distinction without a difference. The exclusivity provision bars actions at common law against one's employer for personal injuries "arising out of" the employment relationship. O'Keefe, supra, 120 N.H. at 835-36, 494 A.2d at 201 (interpreting an earlier version of the exclusivity clause), and courts interpret this language to mean that immunity extends to claims for the employer's torts. See Leeman v. Boylan, 134 N.H. 230, 232-234, 590 A.2d 610, 612 (1991) (court noting in passing that under workers' compensation law, immunity extended to corporate employer who allegedly breached nondelegable duty to keep workplace safe); O'Keefe, supra, 120 N.H. at 834-36, 424 A.2d at 200-01 (extending workers' compensation bar to claim brought by employee against employer

---

[8]Specifically, her complaint charges her emotional distress resulted in part from the failure of the Hospital and Northcare to act.

9

for breaching a contractual duty to provide and enforce safe working conditions); Field Co. v. Nuroco Woodwork, Inc., 115 N.H. 632, 634, 348 A.2d 716, 718 (1975) (observing that employer could not be held liable in tort to employee allegedly injured as a result of employer's negligence). The facts alleged here unquestionably support that plaintiff's employer's common-law tort "arose out of" the employment relationship, and therefore permit plaintiff's employer to seek protection from the exclusivity provision.

Plaintiff argues that, prior to the July 1992 transition, Northcare was not her employer, although it employed the individual defendants. She contends that therefore the Workers' Compensation Law would not bar her claims for emotional distress insofar as they are based on conduct occurring prior to that date. Northcare neither refutes her contention nor provides another basis to dismiss plaintiff's claims for emotional distress.

Accordingly, as the Workers' Compensation Law would only preclude claims against plaintiff's employer, the court finds and herewith rules that plaintiff may proceed with her claims for emotional distress against Northcare to the extent that they are based on conduct preceding the July 1992 transition. In all

10

other respects, Northcare's motion to dismiss plaintiff's claims for emotional distress is granted.

### b.  Saunders and Gilligan

#### (1) Workers' Compensation Preclusion

Saunders and Gilligan argue that plaintiff's claim for negligent infliction of emotional distress is barred by the exclusivity provision of the Workers' Compensation Law.  Except for intentional torts, the statute explicitly provides employees with immunity from suits brought by co-employees arising in the employment context.  RSA 281:12, II (1987); Thompson v. Forest, 136 N.H. 215, 219, 614 A.2d 1064, 1066-67 (1992) (overruling prior holding that this provision is unconstitutional). Accordingly, the court grants Gilligan's and Saunders' motion to dismiss plaintiff's claim for negligent infliction of emotional distress.

#### (2) Elements of Intentional Infliction of Emotional Distress

Gilligan and Saunders also argue that plaintiff fails to allege sufficient facts to support a claim for intentional infliction of emotional distress.

11

To state a claim for intentional infliction of emotional distress, plaintiff must allege that through extreme and outrageous conduct defendants intentionally or recklessly caused severe emotional distress.  See Morancy v. Morancy, 134 N.H. 493, 495-96, 593 A.2d 1158, 1159 (1991) (citing RESTATEMENT (SECOND) OF TORTS § 46 (1965)).  Liability should be imposed

> only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>     The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

RESTATEMENT, supra, § 46, cmt. d.

It is for the court, not the jury, to initially determine whether defendants' conduct could be construed as "so extreme and outrageous as to permit recovery."  RESTATEMENT, supra, § 46, cmt. h.  The court notes that successful claims for intentional infliction of emotional distress typically arise from conduct that was unusually atrocious or outlandish.  See, e.g., Wagenmann v. Adams, 829 F.2d 196, 214 (1st Cir. 1987) (arresting and imprisoning and then committing innocent man to mental

12

institution on eve of daughter's wedding constitutes outrageous conduct) (interpreting Massachusetts law).

Duguay claims that while Gilligan was her supervisor, he "habitually, repeatedly and intentionally subjected . . . [her] to sexually suggestive, demeaning and inappropriate statements . . . ." Complaint ¶ 24. These comments included remarks about the freckles on plaintiff's back, asking plaintiff to model a bathing suit for him, and inviting plaintiff on an overnight trip unrelated to work. Id. ¶¶ 20, 22. Plaintiff further alleges Gilligan offensively touched her such as by blowing into her ear and pulling on her clothes. Id. ¶ 20. Arguably, plaintiff has alleged the type of "ongoing, unadorned discrimination of an inherently offensive nature" that this court has previously found to be actionable. See Godfrey v. Perkin-Elmer Corp., 794 F. Supp. 1179, 1189 (D.N.H. 1992). The outrageousness of Gilligan's conduct is further revealed by the possibility that he "'abuse[d] . . . a position of actual or apparent authority'" over her. See id. at 1190 (quoting Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1388 (10th Cir. 1991)). The court finds and rules that Gilligan's alleged conduct is sufficiently "extreme and outrageous" to support a claim for intentional infliction of emotional distress.

13

Plaintiff's claim for emotional distress against Saunders is more shaky than that against Gilligan.  Plaintiff alleges Saunders was aware that Gilligan was harassing her and failed to take adequate measures to prevent the conduct from continuing. Complaint ¶¶ 26, 42.  However, her complaint acknowledges that Saunders made some attempts to investigate her claims.  Id. ¶ 26. Nevertheless, when viewing plaintiff's allegations in the most flattering light, they arguably support that Saunders behaved recklessly over an extended period of time.  It may well be that discovery will reveal that Saunders' conduct is not actionable. However, until such time, the court finds and rules that plaintiff may maintain her claim for intentional infliction of emotional distress against Saunders.

### (3) Statute of Limitations

Finally, Gilligan argues that plaintiff's claim for intentional infliction of distress is time-barred insofar as it is based on conduct occurring more than three years prior to the

14

filing of the complaint.[9]  Gilligan cites to RSA 508:4, I (Supp. 1994), which provides in relevant part:

> Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

Under the codified limitations period, a cause of action accrues once a plaintiff has reason to know that defendant's tortious conduct has caused her harm.[10]  Conrad v. Hazen, 140 N.H. ___, 665 A.2d 372, 375 (1995).  Thus, the action does not accrue until "the plaintiff should reasonably know of the damage[.]"  Id. (citing McCollum v. D'Arcy, 138 N.H. 285, 286, 638 A.2d 797, 798 (1994)).  However, if the original injury was

---

[9]Gilligan's argument is based in part on the theory of equitable tolling.  Specifically, he insists that the limitations period applicable to plaintiff's state law claims was not tolled when she filed her administrative charges.  Because it does not affect the analysis of this issue, the court will accept, without deciding, that defendant's position is correct and therefore that the filing of plaintiff's administrative charges did not toll the limitations period of her state law claims.

[10]This principle codified what was previously known at common law as the discovery rule.  See McCollum v. D'Arcy, 138 N.H. 285, 286, 638 A.2d 797, 798 (1994).

15

"'sufficiently serious to apprise the plaintiff that a possible violation of [her] rights had taken place,'" id. (quoting Rowe v. John Deere, 130 N.H. 18, 22, 533 A.2d 375, 377 (1987)), the plaintiff would not be entitled to the benefit of the discovery rule.

Plaintiff asserts that she has alleged Gilligan engaged in a continuing course of conduct, the tail-end of which occurred within the limitations period. According to plaintiff, since she timely filed as to part of the conduct, the complaint is timely filed as to all acts included in the pattern of harassment, even those outside the limitations period.[11] In a situation such as

---

[11]The continuing violation theory articulated by plaintiff is normally employed in conjunction with Title VII claims, but nothing therein would preclude its application to state law claims. See Bustamento v. Tucker, 607 So.2d 532, 542 (La. 1992) (applying theory to action for intentional infliction of emotional distress resulting from sexual harassment of continuous nature); but see Retherford v. AT & T Communications of Mountain States, Inc., 844 P.2d 949, 979 n.18 (Ut. 1992) (recognizing but not wholly adopting the continuing violations theory to common law claims). Under Title VII, when a plaintiff has shown discrimination continuing into the actionable period, back pay may be also based on acts antedating the limitations period so long as they are part of a persistent process of illegal discrimination. Sabree v. United Bhd. of Carpenters & Joiners, Local No. 33, 921 F.2d 396, 401 (1st Cir. 1990). The theory is based both on evidence that Congress had envisioned compensating plaintiffs for continuing acts of discrimination, and that the earlier conduct is "'simply incidents of a continuing discriminatory practice for which the defendant has [already] been found liable . . . .'" Id. (citation omitted) (alteration in Sabree).

16

this, plaintiff's continuing violation theory is not really necessary to support that a violation occurred; rather, it is needed merely to determine whether she can be compensated for the earlier conduct. See Sabree, supra note 11, 921 F.2d at 400.

Plaintiff contends, essentially, that her emotional distress resulted from the combined effects of defendants' entire conduct, which occurred both within and without the limitations period. Under this argument, defendants' tortious conduct is not composed of separate acts, each of which is independently actionable and gives rise to immediate injuries; instead, plaintiff arguably has been injured by the cumulative effects of the pattern of defendants' conduct.

The court accepts this position to a certain degree and finds, therefore, that plaintiff cannot reasonably be said to have been alerted to the tort and accompanying injury until the harassment has run at least part of its course and until plaintiff has begun to experience at least some emotional distress. The complaint, as it is presently worded, makes clear that plaintiff was aware of the earlier harassment, but does not designate at what point she began to suffer emotional distress, nor is it immediately clear whether the earlier harassment and injury were sufficiently serious to apprise her that her rights had been violated. If, through the process of discovery, it is

17

revealed that this crucial moment occurred after March 23, 1992 (or three years before plaintiff filed the complaint), it may well be that plaintiff can recover for all of defendant's unlawful conduct that was part of the course of harassment. Accordingly, the court finds and herewith rules that Gilligan's motion to dismiss the claim for intentional infliction of emotional distress must be denied.

### c.   The Hospital

The Hospital moves to dismiss the claims for both intentional and negligent infliction of emotional distress.  Any difficulties of plaintiff's claims for emotional distress are compounded by the ambiguity of the role played by the Hospital in determining the conditions of plaintiff's employment.  For reasons already expressed, if the Hospital was plaintiff's employer[12] at all relevant times, then plaintiff's claims for emotional distress against the Hospital are precluded by the exclusivity clause of the Workers' Compensation Law.  See Discussion, supra part 3.a.  However, at the motion to dismiss

_____

[12]The determination of whether the Hospital is plaintiff's "employer" for purposes of the Workers' Compensation Law requires an examination of "'the employer's right to the employee's labor and [its] right to control the employee's performance, and the employee's corresponding right to compensation."' Leeman, supra, 134 N.H. at 233, 590 A.2d at 612 (quoting Swiezynski v. Civiello, 126 N.H. 142, 145, 489 A.2d 634, 637 (1985)).

18

stage, the allegations of the complaint must be construed in a light most favorable to plaintiff; the court will therefore assume here that the Hospital was not plaintiff's employer after July 1992. Notwithstanding this assumption, the allegations of the complaint still fall far short of establishing a viable claim for intentional infliction of emotional distress against the Hospital. Indeed, outside of generally alleging that the Hospital failed to prevent her injury, plaintiff identifies no specific conduct of the Hospital, or of a Hospital employee, that could support her claim for intentional infliction of emotional distress. The only individuals identified in the complaint are defendants Gilligan and Saunders, but they were employed by Northcare when the harassment took place. Complaint ¶ 16.

The Hospital also challenges plaintiff's claim for negligent infliction of emotional distress. In New Hampshire, as elsewhere, a claim for negligent infliction of emotional distress must be based on defendant's underlying negligence. See Corso v. Merrill,[13] 119 N.H. 647, 651-659, 406 A.2d 300, 303-09 (1979); see also Douglas v. Fulis, 138 N.H. 740, 743, 645 A.2d 76, 78 (1994) (noting that in the fifteen years since Corso was decided, courts have found that bystanders must show defendant's

---

[13]Although Corso was discussing the standards applicable to bystanders seeking to recover emotional distress damages, its reasoning is equally applicable to the case at bar.

19

negligence before recovering for negligent infliction of emotional distress).

The Hospital argues that a lack of duty prevents it from being susceptible to a claim for negligent infliction of emotional distress. "A duty of care arises if harm is a sufficiently probable consequence of an act that a careful person would avoid." Bronstein v. GZA GeoEnvironmental, Inc., ___ N.H. ___, ___, 665 A.2d 369, 371 (1995) (citing Chiuchiolo v. New England Wholesale Tailors, 84 N.H. 329, 332, 150 A. 540, 542 (1930)). "'The test of due care is what reasonable prudence would require under similar circumstances.'" Calini v. Dep't of Transp., 136 N.H. 606, 610, 620 A.2d 1028, 1030 (quoting Weldy v. Town of Kingston, 128 N.H. 325, 330-31, 514 A.2d 1257, 1260 (1986)).

Plaintiff responds that because the Hospital initially hired all the parties, it had a duty "not to hire sexist managers" and "an ongoing duty to control any harassing problems." Plaintiff's Amended Objection at 13. Therefore, plaintiff's assertion of duty depends not upon her relationship with the Hospital, but rather on the Hospital's role in employing the individual defendants. The Supreme Court of New Hampshire recognizes that an employer may be liable to another for the negligent hiring or retaining of an employee whom the employer "knew or should have

20

known was unfit for the job so as to create a danger of harm to third persons." Marquay v. Eno, ___ N.H. ___, ___, 662 A.2d 272, 280 (1995) (citing Cutter v. Town of Farmington, 126 N.H. 837, 840-41, 498 A.2d 316, 320 (1985); LaBonte v. National Gypsum Co., 113 N.H. 678, 631, 313 A.2d 403, 405 (1973)). The court stated that for a cause of action for negligent hiring or retention, the plaintiff must establish "some [causal] connection between the plaintiff's injury and the fact of employment." Id. at ___, 662 A.2d at 280 (quotation omitted) (alteration in Marquay). The court continued,

> The requirement of causal connection to employment does not mean, however, that the employee's criminal conduct must have been performed within the scope of employment, during working hours, or even while the perpetrator was an employee. See Henley v. Prince George's County, 60 Md. App. 24, 479 A.2d 1375, 1383 (Md. Ct. Spec. App. 1984); Bates [v. Doria], [150 Ill. App. 3d 1025,] 104 Ill. Dec. [191,] 195, 502 N.E.2d [454,] 458 [(1986)]; Dieter [v. Baker Service Tools], 739 S.W.2d [405,] 408 [(Tex. Ct. App. 1987)]. Liability exists not because of when the injury occurs, but because "the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct." RESTATEMENT (SECOND) OF TORTS § 320B comment e (emphasis added).

Id. at ___, 662 A.2d at 280-81. The court also noted that employers have been held liable even for the conduct of former employees. Id. at ___, 662 A.2d at 281. From this legal

21

backdrop, the court reasoned that a school district owed a duty to students who claimed they were abused and harassed by school employees outside of school hours and even after graduation. Id.

Similarly, here, to the extent that plaintiff' claim for negligent infliction of emotional distress against the Hospital is not barred by the Workers' Compensation Law, her claim may survive at this stage. Viewing the complaint in a light most favorable to plaintiff, she has just barely set forth sufficient allegations to support the Hospital's duty to refrain from negligently hiring and retaining its employees extended to her when she became employed by Northcare.

Accordingly, the court denies the Hospital's motion to dismiss plaintiff's claim for negligent infliction of emotional distress and grants its motion to dismiss the claim for intentional infliction of emotional distress.


4. Enhanced Compensatory Damages

Plaintiff also seeks enhanced compensatory damages from the Hospital, Northcare, and Gilligan. While punitive damages are not permitted in New Hampshire, enhanced compensatory damages, reflecting aggravating circumstances, may be awarded when the conduct complained of is "wanton, malicious, or oppressive."

22

<u>Panas v. Harakis</u>, 129 N.H. 591, 608, 529 A.2d 976, 986 (1987) (citing <u>Vratsenes v. N.H. Auto, Inc.</u>, 112 N.H. 71, 73, 289 A.2d 66, 68 (1972)). Such damages are reserved for the exceptional case and are not available for all intentional torts. <u>Aubert v. Aubert</u>, 129 N.H. 422, 431, 529 A.2d 909, 914 (1987). "'[T]here must be 'ill will, hatred, hostility, or evil motive on the part of the defendant.'" <u>Id.</u> (quoting <u>Munson v. Raudonis</u>, 118 N.H. 474, 479, 387 A.2d 1174, 1177 (1978)).

Northcare, the Hospital, and Gilligan all contend that they have committed no tort for which enhanced compensatory damages are available. Gilligan's argument has the least merit. The allegations of the complaint suffice not only to permit plaintiff to go forward with her claim for intentional infliction of emotional distress, but also for her to seek compensatory damages, appropriately enhanced, from Gilligan. Northcare and the Hospital stand on much firmer grounds, particularly as the court has dismissed the claims for intentional infliction of emotional distress against them.

Accordingly, the court grants the motion to dismiss the count for enhanced compensatory damages as to Northcare and the Hospital, but denies Gilligan's motion.

## 5.  RSA 354-A

Defendant argues, and plaintiff in fact concedes, that New Hampshire's Law Against Discrimination, RSA 354-A, does not provide her with a private right of action.  Indeed, the court has previously held that RSA 354-A does not create a private right of action for individuals aggrieved by unlawful discriminatory practices.  See Tsetseranos v. Tech Prototype, Inc., 893 F. Supp. 109, 120 (D.N.H. 1995).  In Tsetseranos, the court reasoned as follows:

> New Hampshire's "Law Against Discrimination" . . . establishes an administrative process through which a person claiming to be aggrieved by an unlawful discriminatory practice can seek relief.  See RSA 354-A:21 (describing complaint procedure).  Under the statute, a complainant must go through the administrative process and obtain an order or decision from the state's Human Rights Commission before she can seek judicial review.  In order to obtain judicial review of a commission order or decision, the complainant must file a petition "in the superior court of the state within any county in which the unlawful practice . . . occurs . . . ."  RSA 354-A:22, I.
>   The statutory provision on judicial review further provides,
>     If the complainant brings an action in federal court arising out of the same claims of discrimination which formed the basis of an order or decision of the commission, such order or decision shall be vacated and any appeal therefrom pending in any state court shall be dismissed.
> RSA 354-A:22, V.

24

> The court's review of the plain language of
> RSA 354-A leads the court to conclude that
> the statute does not create a private right
> of action for individuals aggrieved by
> unlawful discriminatory practices.  Instead,
> under RSA 354-A, such individuals are limited
> to seeking relief through the administrative
> process created by the statute and to
> obtaining judicial review of the results
> thereof in state court.  The court therefore
> concludes that it is without jurisdiction
> over any claim plaintiff has under RSA 354-A.

Id.

Finding that this reasoning remains sound in all respects, the court grants defendants' motion to dismiss Count IV of the complaint without further comment.


## Conclusion

For the foregoing reasons, the court defers ruling on the Hospital's motion to dismiss (document 22) as to the Title VII claim (Count I) pending the outcome of further discovery.  The parties are granted until March 25, 1996, to conduct discovery on the limited issue of whether the Hospital continued to employ plaintiff after July 1992; dispositive motions should be filed by April 25, 1996.  Furthermore, the court grants the following: motion to dismiss (document 22) of Northcare and the Hospital as to the claim for intentional infliction of emotional distress (Count II); motion to dismiss (document 22) of Saunders as to the claim for negligent infliction of emotional distress (Count II);

25

motion to dismiss (document 24) of Gilligan as to the claim for negligent infliction of emotional distress (Count II); motion to dismiss (document 22) of Northcare and the Hospital as to the claim for enhanced compensatory damages (Count III). The court further grants, in part, the motion to dismiss (document 22) of Northcare as to the claim for negligent infliction of emotional distress insofar as it is based on conduct occurring after July 5, 1992. The court also grants defendants' motions to dismiss (documents 22 and 24) as to plaintiff's claim under RSA 354-A (Count IV). In all other respects, defendants' motions are herewith denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

January 25, 1996

cc:  Vincent A. Wenners, Jr., Esq.
     Mark T. Broth, Esq.
     Edward E. Shumaker III, Esq.

26